# ILLINOIS SURETY COMPANY *v.* THE JOHN DAVIS COMPANY ET AL.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 235. Argued April 27, 1917.—Decided June 4, 1917.

The purpose of the Act of February 24, 1905, 33 Stat. 811, is to provide security for the claims of all persons who furnish labor or material on public works of the United States; the act, and bonds given under it, are to be construed liberally to effectuate this purpose; and the release of sureties through mere technicalities is not to be encouraged.

S, while conducting his business under supervision of a creditors' committee, entered into a contract with the United States for the doing of certain work, and gave bond with surety to secure claims for labor and materials under the Act of February 24, 1905, *supra.* After part performance of the contract, he and the creditors formed a corporation to take over his affairs, which, without the consent of the United States or the surety, received a transfer of all his business and assets, and thereafter under the management of S, as president, and the control of the creditors through the board of directors, continued for a time to perform the contract. *Held:* (1) That in view of § 3737, Rev. Stats., the transfer could not effect an assignment of the contract but amounted at most to a subletting.

(2) That as the responsibility of the contractor under the contract and the actual management of the business were not changed, nor

the surety prejudiced, the transfer did not operate to discharge the surety from past or future liability.

(3) That labor and materials furnished in the prosecution of the work under the contract, after the transfer of the contractor's business to the corporation, were to be regarded as furnished to him, within the meaning of the Act of February 24, 1905, *supra,* as well as to the corporation, and that the latter, besides, might be deemed the successor of the contractor within the condition of the bond, binding him "his heirs, successors," etc.

Questions of liability to pay interest under a bond given to secure payment for labor and materials, furnished under a construction contract with the United States, are determinable by the law of the State in which the contract and bond were made and to be performed.

Under the law of Illinois the liability of a surety on a bond is extended beyond the penalty by way of interest from the date when the liability on the bond accrued.

Where claims are all liquidated and amounts are not disputed, but only liability under the bond, the surety, which has not elected to pay into court, is properly chargeable with interest from commencement of suit upon the aggregate of the claims allowed as reduced to the penal amount of the bond.

Acts of creditors upon which the surety neither acted nor relied, which did not affect it and which are not inconsistent with a resort to the security of the bond, afford no basis for an equitable estoppel in favor of the surety.

The renting of a plant of cars, track and equipment actually used in the construction of public work for the United States is a furnishing of "materials" within the meaning of the Act of February 24, 1905; and the rent reserved, together with the loading and freight expenses incident to bringing the plant to and from the place of use, are liabilities covered by the contractor's bond.

226 Fed. Rep. 653, affirmed.

THE case is stated in the opinion.

*Mr. Albert J. Hopkins* for plaintiff in error.

*Mr. William D. McKenzie* and *Mr. Worth Allen,* with whom *Mr. Newton Wyeth, Mr. Robert J. Cary, Mr. F. Harold Schmitt* and *Mr. Charles S. Holt* were on the briefs, for defendants in error.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

This is an action against the Illinois Surety Company on a bond given by one Schott under Act of Congress, February, 24 1905, 33 Stat. 811, to secure performance of his contract for work on the Naval Training Station at Chicago.[1] It is brought for the benefit of persons who furnished labor or materials. The bond provides:

"The condition of the above bond is such, that if the said above bounden principal, W. H. Schott, his or their heirs, successors, executors, or administrators . . . shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in the aforesaid contract, then this obligation to be void and of no effect; otherwise to remain in full force and virtue."

The bond was given on August 3, 1908. Schott was then heavily indebted; and his business was being conducted under the supervision of a creditors' committee. Later, on the advice of that committee, the Schott Engineering Company was incorporated to take over the business; and on January 2, 1909, all the assets were transferred to it. Schott became president, the members

---

[1] The act, which is entitled "An Act for the protection of persons furnishing materials and labor for the construction of public works" provides that a contractor's bond shall include the obligation to:

"promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work provided for in such contract; and any person, company, or corporation who has furnished labor or materials used in the construction or repair of any public building or public work, and payment for which has not been made, shall have the right to intervene and be made a party to any action instituted by the United States on the bond of the contractor, and to have their rights and claims adjudicated in such action and judgment rendered thereon, subject, however, to the priority of the claim and judgment of the United States."

of the creditors' committee directors. Substantially all the capital stock was issued to Schott, and all was retained by him except $36,000 preferred stock which was later sold—the proceeds being used to pay debts. Neither the Government nor the Surety Company was advised of the transfer, which left the management and the conduct of the business unchanged; and the work was proceeded with continuously from the execution of the bond until January 14, 1910, when both Schott and the Company were adjudicated bankrupt. After a short interruption, the work was resumed by the Receiver under authority of the court; and settlement was made with the Government. Twenty-seven creditors, six of whom furnished labor or materials prior to January 2, 1909, the rest of whom had claims arising between that date and the bankruptcy, sought to recover on the bond.

The District Court allowed recovery on five of the claims, aggregating $15,333.24, which accrued prior to the transfer of the business to the Schott Engineering Company. The Circuit Court of Appeals reversed that judgment and allowed the claims of all who joined in the writ of error to that court—nineteen aggregating $38,121.02; but it reduced them *pro rata* to make the aggregate equal the penalty of the bond—$31,047.18. It then allowed interest on all from the date of the commencement of the suit. 226 Fed. Rep. 653. The Surety Company appealed to this court and contends:

(1) As to each claim that it was released from liability by the transfer of the business to the Schott Engineering Company during the progress of the work.

(2) As to each claim that interest should not begin to run before the date when the amount payable on all claims was ascertained by the judgment of the Circuit Court of Appeals.

(3) As to certain claims, that the creditors are estopped by specific acts from enforcing the liability upon the bond.

(4) As to the claim of the United States Equipment Company, that rental for cars, track and equipment is not a claim for "labor and materials" recoverable on bond.

These contentions will be considered in their order.

, *First:* The purpose of the act was to provide security for the payment of all persons who provide labor or material on public work. This was done by giving a claim under the bond in lieu of the lien upon land and buildings customary where property is owned by private persons. Decisions of this court have made it clear that the statute and bonds given under it must be construed liberally, in order to effectuate the purpose of Congress as declared in the act. In every case which has come before this court, where labor and materials were actually furnished for and used in part performance of the work contemplated in the bond, recovery was allowed, if the suit was brought within the period prescribed by the act. Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute.[1] As the basis of recovery is supplying labor and material for the work, he who has supplied them to a subcontractor may claim under the bond, even if the subcontractor has been fully paid. *Mankin* v. *Ludowici-Celadon Co.*, 215 U. S. 533. .

[1] *Guaranty Co.* v. *Pressed Brick Co.*, 191 U. S. 416; *Hill* v. *American Surety Co.*, 200 U. S. 197; *United States Fidelity Co.* v. *Struthers-Wells Co.*, 209 U. S. 306; *Mankin* v. *Ludowici-Celadon Co.*, 215 U. S. 535; *Title Guaranty & Trust Co.* v. *Crane Co.*, 219 U. S. 24; *United States Fidelity Co.* v. *Bartlett*, 231 U. S. 237; *A. Bryant Co.* v. *N. Y. Steam Fitting Co.*, 235 U. S. 327; *Illinois Surety Co.* v. *Peeler*, 240 U. S. 214. See also *Equitable Surety Co.* v. *McMillan*, 234 U. S. 448. In *Hardaway* v. *National Surety Co.*, 211 U. S. 552, where recovery was denied, the "use plaintiffs" had not furnished materials or labor, but were financiers. In *Texas Cement Co.* v. *McCord*, 233 U. S. 157, the questions involved were whether suit was brought within the statutory period. In *United States Fidelity Co.* v. *Kenyon*, 204 U. S. 349; *United States* v. *Congress Construction Co.*, 222 U. S. 199; *Title Guaranty & Surety Co.* v. *Harlan & Hollingsworth*, 228 U. S. 567, the questions raised were as to the jurisdiction of the court. .

If Schott had formally sublet the contract to the Engineering Company, the Surety Company would clearly be liable. But the transfer of the business was, at most, a subletting; since under Rev. Stats., § 3737, Schott could not assign a contract with the United States.

It is urged that the bond referring to Schott provides protection only to those "supplying him or them labor and materials." But the claims in question were in a very practical sense furnished *him*—as well as the Engineering Company. He remained liable on the contract; and no one else was known to the United States. Furthermore, if attention is to be directed to the precise wording of the bond, it should be noted that it refers to Schott "his or their heirs, successors, executors or administrators"; and the Engineering Company may properly be deemed a successor. The argument that the surety's risk ought not to be increased by holding it liable for the default of strangers to the original contract is of no greater force in the case of an assignee than it is in that of the subcontractor. The Surety Company could protect itself by insisting that the contractor require a bond from all subcontractors and assignees. The Surety Company was in nowise prejudiced by the transfer of the business, since the management remained unchanged; and no reason is shown for applying the rule of *strictissimi juris. Guaranty Co.* v. *Pressed Brick Co.,* 191 U. S. 416, 426.

*Second:* The contract and bond were made in Illinois and were to be performed there. Questions of liability for interest must therefore be determined by the law of that State. *Scotland County* v. *Hill,* 132 U. S. 107, 117. Under the law of Illinois the liability of a surety on a bond is extended beyond the penalty by way of interest from the date when the liability on the bond accrued. *Holmes* v. *Standard Oil Co.,* 183 Illinois, 70. See *United States* v. *U. S. Fidelity Co.,* 236 U. S. 512, 530, 531. The liability here accrued at least as early as the commencement of the

suit. The Surety Company contends that the amount each claimant was to receive was not made definite until it was actually decided by the Court of Appeals. But the claims were all for liquidated amounts; and in no instance was the amount in dispute. The controversy was merely as to which of the claimants should be entitled to share in the liability under the bond. The Surety Company might have paid into court at the commencement of the suit an amount equal to the penalty of the bond. It did not elect to do so; and as the aggregate liability on the claims exceeds the penalty, it was properly held for an additional amount equal to interest from the commencement of the suit.

*Third:* The contention of the Surety Company that certain of the claimants are estopped from enforcing liability on the bond rests upon different acts in respect to the several creditors. As to some it is because they filed against the estates in bankruptcy of *both* Schott and the Engineering Company the whole of their claims for material delivered in part to each. As to one creditor the estoppel is predicated upon the fact that in answer to an enquiry he recommended that the receiver in bankruptcy complete the contract. As to another creditor the estoppel is predicated upon the fact that he filed his claim in bankruptcy against the Engineering Company while the materials had been furnished to Schott. As to still another, the contention rests upon the fact that having claims against both Schott and the Engineering Company, he had stated to the Engineering Company a single account covering all the items and had accepted part payment; and furthermore had participated in the activities of the creditors' committee which supervised the business throughout the whole period. Such acts lack all the elements of an equitable estoppel. The Surety Company was not led thereby to do or to omit to do anything. It did not rely upon, nor was it affected by, any of the acts it now calls

attention to. *Dickerson* v. *Colgrove*, 100 U. S. 578, 580. There is in fact no inconsistency between the claimants' earlier acts and their attempt to recover on the bond. The Surety Company's contention is without merit.

*Fourth:* The specific objection made to the claim of the United States Equipment Company, for rental of cars, track and equipment used at the Naval Training Station and the expense of loading the plant and freight thereon to and from the station is also unfounded. The Surety Company contends that this is not supplying "labor and materials." The equipment was used in the prosecution of the work. Material was thus supplied, although, a loan serving the purpose, no purchase of it was made. The expense of loading and freight were properly included with the fixed rental as recoverable under the bond. *Title Guaranty & Trust Co.* v. *Crane Co.*, 219 U. S. 24, 34.

*Judgment affirmed.*

Dissenting: MR. JUSTICE VAN DEVANTER and MR. JUSTICE MCREYNOLDS.