CITY OF STUART for the Use and Benefit of FLORIDA EAST COAST RY. CO. v. AMERICAN SURETY CO. OF NEW YORK.

No. 5691.

Circuit Court of Appeals, Fifth Circuit.

Feb. 26, 1930.

Robert H. Anderson and John B. L'Engle, both of Jacksonville, Fla. (Robert H. Anderson, Russell L. Frink, and John B. L'Engle, all of Jacksonville, Fla., on the brief), for appellant.

W. McL. Christie, of Fort Myers, Fla. (Doggett, Christie & Doggett, of Jacksonville, Fla., and Stuart Mackenzie, of Miami, Fla., on the brief), for appellee.

Before BRYAN and FOSTER, Circuit Judges, and SIBLEY, District Judge.

SIBLEY, District Judge.

A suit at law in the name of city of Stuart, for the use of Florida East Coast Railway Company, was brought against American Surety Company, as surety on a contractor's bond, to recover for freight, switching, and demurrage charges on carload material used in the performance of a contract with the city for public work, and was dismissed on demurrer. The controlling questions are: (1) Whether the charges were owing by the contractor; (2) whether they are within the liability assumed under the bond.

1. The declaration avers generally that the services of the railway company were furnished to the contractor, John W. Rollins Company, and used by it in the performance

of its contract. The bills of particulars annexed, however, under the column entitled "due from," say variously: "City of Stuart, care Rollins Construction Company," and "City of Stuart, care J. W. Rollins," and "City of Stuart, care J. W. Rollins Company." The declaration should control as to the person sought to be charged by this suit. It is urged, however, that the bills show that the shipments were consigned to the city of Stuart, and not to the contractor, and that the city, and not the defendant, necessarily owes the charges. Assuming the fact to be true, the consequence claimed would not follow. It does not appear that the city ordered the material, or authorized it shipped to it, or accepted delivery on its arrival. On the contrary, it is alleged that the contract required the contractor to furnish all labor and material, and that the service of the railroad in delivering the material was supplied to the contractor. The bills may be simply an error. The statements of the declaration control on demurrer.

██ 2. The bond, which measures the defendant's liability, does not refer to any statute, but was required by section 5397 of Compiled General Laws of Florida of 1927, embracing an act of 1915 as amended in 1925. The bond should doubtless be construed in the light of the law requiring it, and be supposed to accomplish its purposes. Therefore, whether the statute intends to cover the charges of railroads for freight and demurrage is important. The precise point here presented has not been ruled on by the Florida Supreme Court, but that court recognizes that the Florida statute is an adoption of the statute of the United States on the subject, 40 U. S. Code, § 270 (40 USCA § 270), and that the authoritative construction of the latter prior to the enactment of the former was adopted with the statute, and that federal rulings since are highly persuasive as to the meaning of the Florida statute. Kidd v. Jacksonville, 97 Fla. 297, 120 So. 556. The federal decisions herein relied on were reviewed with approval by the Florida Court in Fulghum v. State of Florida, 92 Fla. 662, 109 So. 644. The particular words for construction in the Florida statute are those which require the contractor for public work to execute a bond "with the additional obligation that such contractor, or contractors, shall promptly make payments to all persons supplying him, or them, labor, material and supplies, used directly or indirectly by the said contractor * * * or sub-contractors in the prosecution of the work provided for in said contract." Laws 1925, c. 10035. The

early constructions of the similar words of the federal statute were rather strict; this court in 1899, in United States v. Hyatt (C. C. A.) 92 F. 442, concluding that the services of a railroad were not "labor." This decision has been followed so recently as Mandel v. United States (C. C. A.) 4 F.(2d) 629.

Besides the narrow meaning given the word "labor," the main reasons advanced for the holding are that the common carrier has a lien, and does not need protection by a bond, and that on delivering the goods without payment he destroys the lien, and prejudices the surety in his right of subrogation. As to the first reason, we find in the statute no reference to liens. Protection is expressly extended to *all persons* who furnish the named things, whether under lien or not, whether individual or corporation, rich or poor, supplying in person or through agents and representatives. As to the last see Fulghum v. Florida, 92 Fla. 662, 109 So. 644. A railroad company is not excluded. In point of fact, many persons who have a lien enforceable by retention have been held to be within the statute. Nor is the nature of the work done in transportation such as to prevent its being labor. Much of what is done by the agents of the railroad company is hard labor, and the doing of the work, even by the use of machines, is recognized as labor under the statute. Fulghum v. Florida, 92 Fla. 662, 109 So. 644. Transportation of materials by cart and towboat is uniformly allowed as labor. United States Fidelity & Guaranty Co. v. United States, 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Title Guaranty & Trust Co. v. Crane Co., 219 U. S. at page 34, 31 S. Ct. 140, 55 L. Ed. 72. In what way can the distance of the transportation or the fact that it is over a specially prepared rail track make it any the less labor? It was held in Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, that, where track and cars and equipment were rented by the contractor, and used by him in transportation for the job, the rental was protected by the bond. If he should charter a railroad or a train, the railroad company could, under this decision, recover. Why not when it furnishes single cars? By all the cases, when a furnisher of material pays the freight, whether bound to do so or because the contractor does not pay, the freight is added to the cost of the material, and protected. See Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A.) 20 F.(2d) 514. The same "place value" is given the material by the transportation, no matter who pays the freight, and to the same extent is material furnished.

The decisions of the Supreme Court reject the theory of strict construction, and adopt that of liberal construction in the allowance of claims above alluded to. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; United States Fidelity & Guaranty Co. v. United States, 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. So do the above-cited Florida decisions. In addition to protecting the honest claims of persons who have contributed to the performance of the job, the legislative intent no doubt was also to minimize impediment and delay of the work, and facilitate procurement of labor and materials, through the security afforded by the bond. If the carrier is included in its benefits, this intent will be served. If he is not included, he must hold the freight until payment is made, and sell it for charges if it is not, to the embarrassment of the work.

The entire subject is well analyzed, and the authorities reviewed, in the very recent case of State of Delaware v. Ætna Casualty & Surety Co. (Del.) 145 A. 172. The claim that the surety is unjustly prejudiced by the surrendering of the carrier's lien is there fully examined and exploded. Additionally it may be remarked that the carrier's lien could not be of advantage to the surety by way of subrogation. If by payment he can be subrogated, he could enforce it only against the materials transported, thus keeping them out of the job. Yet the first and most important obligation of the bond is that the material shall be furnished, and the work done, according to the contract. If the materials whose transportation is not paid for are sold, either by the carrier or the surety, in order to satisfy the charges on them, the surety would still be bound to see that they were replaced by other material whose transportation would again have to be paid for. The broad obligation, assumed in the bond, that the contract shall be completed, results in all liens for labor and material being practically unimportant to the surety, except to see that they do not prevent the execution of the work.

If there were any doubt about the meaning of the words of the statute, those of this particular bond are more explicit. They bind the surety to "prompt payment to any person or persons *doing work* or *furnishing skill,* tools, machinery or materials under and for the purpose of said contract." Railroad transportation of materials combines the furnishing of work, skill, and machinery for the purpose of the contract, even if not labor in the narrow sense originally attributed to the word in the Hyatt Case, supra. We think a cause of action was set forth, and that the suit should not have been dismissed.

Reversed, and remanded for further proceedings.