52 F.2d 235 (1931)
UNITED STATES, to Use of J. E. SADLER & CO.,
v.
W. H. FRENCH DREDGING & WRECKING CO., Inc., et al.
No. 3.
District Court, D. Delaware.
August 26, 1931.
*236 Willard M. Harris, of Philadelphia, Pa., and Harry P. Joslyn, of Wilmington, Del., for J. E. Sadler & Co.
Francis deH. Janvier, of Wilmington, Del., for Harry Rose.
Charles F. Curley, of Wilmington, Del., for United States Fidelity & Guaranty Co.
NIELDS, District Judge.
The W. H. French Dredging & Wrecking Company, Inc., on July 7, 1927, entered into a contract with the United States government for the performance of certain dredging work. Before commencing work under the contract, the contractor, pursuant to the provisions of section 270, title 40, USCA, entered into the usual contractor's bond. This action was brought July 23, 1929, in the name of the United States for the use of George W. Clark and Gertrude Sadler, copartners, trading as J. E. Sadler & Co., against W. H. French Dredging & Wrecking Company, Inc., the contractor, and United States Fidelity & Guaranty Company, its surety. Harry Rose and Norbom Engineering Company have intervened. No action has been instituted by the United States in its own behalf upon the bond of the contractor.
No service was had upon the dredging company and it has not appeared. The case was tried to the court without the intervention of a jury.

Findings of Fact.

General.
1. That W. H. French Dredging & Wrecking Company, Inc., entered into a contract with the United States of America on July 7, 1927, for dredging the old entrance to the inland waterway from the Delaware river to Chesapeake Bay, known as the Chesapeake and Delaware Canal.
2. That the bond contemplated by section 270, title 40, USCA, was duly given by the contractor.
3. That the bond provided that the contractor "shall promptly make payments to all persons supplying the principal with labor and materials in the prosecution of the work provided for in said contract."
4. That the work contemplated by the contract was completed on or about May 3, 1928.
5. That on January 17, 1929, the Comptroller General of the United States issued his "Certificate of Settlement," in which it is stated: "I certify that I have examined and settled the claim(s) of the United States against W. H. French Dredging & Wrecking Co., Inc., * * * debtor and find the sum of Two Thousand Nine Hundred Sixty-two Dollars and Twenty-five cents is due the United States from the above-named debtor."
6. That in arriving at this balance, the Comptroller General took into consideration a certain contract between the same parties for dredging work in the Onancock river, Va., under which there was found a balance due the United States of $3,330.10, and the contract in question in this suit under which there was found a balance due the contractor of $367.85, leaving a net balance due the United States of $2,962.25.
7. That there was endorsed across the face of the above-mentioned certificate of settlement dated January 17, 1929, the words and figures, "Cancelled. See A-24614, O. M. 6/20/29."
8. That on August 22, 1929, the Comptroller General of the United States issued his "Certificate of Settlement" in which it is stated: "I certify that I have examined and settled the claim(s) of Robert W. Ruffin * * * Trustee in Bankruptcy for W. H. French Dredging and Wrecking Company, Inc., Bankrupt, against the United States * * * and find that the sum of three hundred sixty-seven dollars and eighty-five cents is due from the United States to said claimant."

Claim of J. E. Sadler & Co.
1. That claimant furnished materials and supplies which were consumed in the prosecution of the work provided for in the contract in question, and were necessary to and formed an integral part of the work.
*237 2. That claimant notified the United States Fidelity & Guaranty Company, surety, by written notice dated July 18, 1928, of the amount and nature of its claim and demanded payment.
3. That the balance due the claimant is the sum of $2,806.51, with interest from July 23, 1929, the date of the institution of this suit.

Claim of Harry Rose.
1. That claimant furnished groceries and provisions to the dredging company, and such supplies were consumed in feeding the crews of the dredges employed by the contractor in the prosecution of the work provided for in the contract in question, and were necessary to and formed an integral part of the work.
2. That the amount due claimant for such supplies is the sum of $1,497.10, with interest from October 7, 1929, the date of the filing of the petition of intervention.

Claim of Norbom Engineering Co.
1. That there is no satisfactory evidence that the materials alleged to have been furnished to the dredging company were ordered by a responsible official of that company, or that such materials were delivered to and used on the dredges in prosecuting the work provided for in the contract in question.
The act of Congress (40 USCA § 270) provides that: "If no suit should be brought by the United States within six months from the completion and final settlement of said contract, then the person or persons supplying the contractor with labor and materials shall, * * * be furnished with a certified copy of said contract and bond, upon which he or they shall have a right of action," etc. The act also provides that suit by a creditor must be brought "within one year after the performance and final settlement" of a contract. It is admitted that work under the contract was completed on or about May 3, 1928. It is likewise admitted that no suit was brought by the United States on its own behalf.
As the defendant does not raise any question as to the furnishing of the materials and supplies or that the prices charged therefor were reasonable and proper, there are but two questions for decision: First, was the suit brought prematurely; and, second, if not, were the labor or materials furnished to the contractor by the respective claimants labor and materials within the meaning of the above-mentioned act of Congress. The determining factor in answering the first question is when was "final settlement" made as that term is used in the act of Congress. The only evidence as to when final settlement was made is embodied in the two certificates of the Comptroller General (Plaintiff's Exhibit No. 2 and Defendants' Exhibit No. 2) and papers annexed thereto. The plaintiff and interveners contend that the date of final settlement was January 17, 1929, the date of the issuance of the first certificate of settlement. On the other hand, the surety company contends that this certificate was canceled June 20, 1929, and that final settlement was not had until the issuance of the second certificate on August 22, 1929.
The general rule for ascertaining the date of "final settlement," as those words are used in this act, has been definitely determined by the Supreme Court in Illinois Surety Co. v. U. S. to use of Peeler, 240 U. S. 214, 36 S. Ct. 321, 323, 60 L. Ed. 609. In that case, Chief Justice Hughes said: "The pivotal words are not `final payment,' but `final settlement,' and in view of the significance of the latter term in administrative practice, it is hardly likely that it would have been used had it been intended to denote payment. * * * We think that the words `final settlement' in the act of 1905 had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. * * * The time of the final administrative determination of the amount due is a definite time, fixed by public record and readily ascertained."
It would, therefore, seem clear that "final settlement" in this case was made January 17, 1929, unless, as claimed by the surety company, the effect of the indorsement of the word "cancelled" on the face of the certificate issued by the Comptroller General evidencing such final settlement on the part of the government was completely to nullify the final settlement which had been effected by the administrative officers of the government. But this indorsement must be read in the light of the letter A-24614, specifically referred to in the indorsement and annexed to the certificate of settlement. That letter clearly shows that, so far as this contract is concerned, the settlement was complete and the amount of $367.85 ascertained to be due from the government. The purpose of the cancellation was to correct an erroneous finding on the part of the government as to payment by the government of the sum so found due.
In the certificate of settlement of January 17, 1929, the administrative officers of the *238 government had combined in one certificate final settlement under two separate contracts between the government and the same contractor, and with the same surety, crediting on the amount due to the government under one contract the amount found due to the contractor under the second contract, the one involved in this suit. This method of accounting was found by the administrative officers to be erroneous, as it was afterwards ascertained by the government that the amount due to the government under the first contract had been paid to it by the contractor's surety. In other words, what was found to be incorrect was the application of the amount due by the government to the contractor and not the amount so found due. What was intended to be canceled was the application of the amount found due to the contractor under the contract involved in this suit and not any change in the amount so found due. In the above-mentioned letter of June 20, 1929, from the Comptroller General to the Acting Chief, Claims Division, he states: "Your action in applying the balance of $367.85 found due in the settlement of January 17, 1929, in reduction of the indebtedness that had been previously adjusted by the surety, was erroneous and should be, and is canceled." By no stretch of the imagination can it be said that this was a cancellation of the final settlement by which it was ascertained that the sum of $367.85 was due from the United States to the contractor.
The surety company urges that the first administrative determination of the amount which the dredging company or its trustee was entitled to receive was on August 22, 1929. Even if this were true, it is not the test of final settlement. The test determined by the rule laid down by the Supreme Court is not the amount the contractor is entitled to receive, but the amount the government either owes to or is entitled to receive from a contractor. This amount was finally determined by the settlement of January 17, 1929, to be $367.85. At no time thereafter was this amount increased or diminished by any action of the administrative officers of the government.
I am satisfied that final settlement under the contract in question was made January 17, 1929. It follows that this suit was not prematurely, but was properly, brought.
Did the coal, water, and cement furnished by J. E. Sadler & Co. come within the meaning of "labor or materials" as those words are used in this act? The testimony clearly establishes the fact that the coal and water were delivered to the contractor and used to generate steam for operation of the dredges employed in the performance of the work called for by the contract, and that the two bags of cement were also used on such work.
Looking to the terms of the statute, it is evident that the purpose of Congress was to require payment for material and labor furnished for the construction of public works. The requirement is simply that the labor and materials be supplied to the contractor in the prosecution of the work provided for in the contract. Decisions of the Supreme Court have made it clear that the statutes and bond given under it must be construed liberally in order to effectuate the purpose of Congress as declared in the act. Technical rules otherwise protecting sureties from liability have never been applied in proceedings under this statute. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 380, 37 S. Ct. 614, 61 L. Ed. 1206. The coal and water was supplied to operate the engines on the dredges. It was indispensable to the prosecution of the work. "If the contractor, whether for purposes of economy or of expedition, elects to do this work by the power of steam, instead of the power of human muscles, it is difficult to understand how it can be logically contended that such power is not supplied in the prosecution of the work, or that the cost of the coal which produces it should not be equally within the protection of the same statute." City Trust, Safe Deposit & Surety Co. v. United States, 147 F. 155, 156 (C. C. A. 2).
The claim of J. E. Sadler & Co. comes within the terms of the bond and should be allowed. The claim for interest from a date prior to the bringing of suit will be disallowed. The surety company was not in a position to relieve itself of liability under the bond, at least before the commencement of the suit. Interest will be allowed from the date of the commencement of this suit.
The claim of Harry Rose is for groceries and provisions supplied by him to the dredging company on its dredges. Such supplies were consumed in feeding the crews of the dredges during the progress of the work. The quantity of supplies furnished and the amount charged therefor is not in dispute. The only question is: Did they come within the terms of the statute? The same general principles apply to this claim as to the claim of J. E. Sadler & Co. heretofore considered. It appears from the undisputed facts that it was necessary in the operation of the dredges *239 that the crews be maintained at all times on the dredges with the necessary food and sleeping quarters. One of the chief reasons for this was that the men were working on three shifts of eight hours each, and so working it was necessary to furnish six regular meals for the different shifts and maintain a practically open kitchen for food between times for men on the working shift. The night cook was kept on duty for the entire night. Three experienced dredging men testified that work of the character this dredging company was engaged in and at this place could only be carried on by feeding and housing the crew on the dredges. I think the evidence amply sustains a finding that the feeding of the workmen on these dredges was indispensable to the work and necessarily involved in it. While the defendant strongly opposes such a finding, it failed to introduce any evidence of persons of experience in this line of work tending to show that it was not necessary to so feed and house the workmen. Under these facts, the question now being considered is answered in the affirmative by the Supreme Court in the case of Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. The surety company attempts to distinguish that case, and contends that the decision of the Circuit Court of Appeals in this circuit in Delaware Dredging Co. v. Tucker Stevedoring Co., 25 F.(2d) 44, 46, decided after Brogan v. National Surety Co., should control the instant case. But that case is clearly distinguishable from this. In distinguishing Delaware Dredging Co. v. Tucker Stevedoring Co. from Brogan v. National Surety Co., Judge Davis said: "There is nothing to show that the furnishing of these scowmen with meals was indispensable to the work, formed an integral part of it, or was necessarily involved in it." In this case there is uncontradicted evidence clearly establishing the fact that, under the surrounding circumstances, the feeding of the crews of these dredges on the dredges was indispensable to the work, an integral part of it, and necessarily involved in it. The claim will be allowed, with interest from the date of the filing of the petition of intervention.
Little need be said as to the claim of Norbom Engineering Company. There is no competent evidence to support this claim. It does not appear that the supplies alleged to have been furnished were furnished to or upon the order of any responsible officer of the dredging company. Nor does it appear that the materials alleged to have been furnished were used by the contractor in the prosecution of the work under the contract. The claim will be disallowed.

Conclusions of Law.
1. That the date of final settlement of the contract here involved from which the period of limitation for bringing suit under the act in question commenced to run, is January 17, 1929.
2. That the indorsement, "Cancelled," on the certificate of final settlement of January 17, 1929, did not operate to cancel such final settlement in so far as the limitation for bringing suit on the bond was concerned, but was only a cancellation as to the payee of the balance due under the contract.
3. That judgment should be entered in favor of George W. Clark and Gertrude Sadler, copartners, trading as J. E. Sadler & Co., and against the United States Fidelity & Guaranty Company, for the sum of $2,806.51 with interest from July 23, 1929.
4. That judgment should be entered in favor of Harry Rose and against the United States Fidelity & Guaranty Company for the sum of $1,497.10 with interest from October 7, 1929.
5. That judgment should be entered in favor of United States Fidelity & Guaranty Company and against Norbom Engineering Company.
Exceptions may be filed within four days.