JAMES MILES & SON CO. v. ÆTNA CASUALTY & SURETY CO.

No. 5182.

District Court, D. Massachusetts.

Nov. 29, 1932.

Stuart Macmillan and Barker, Davison & Shattuck, all of Boston, Mass., for plaintiff.

McConnell, Triggs & McConnell, of Boston, Mass., for defendant.

BREWSTER, District Judge.

This is an action at law to recover on a bond given by the defendant, as surety, with W. J. Devinney Company, a partnership, as principal, to guarantee to the plaintiff performance by the Devinney Company of its subcontract with the plaintiff. The case was heard without jury. The facts material to the issues involved are not in dispute. Briefly, they are as follows:

The plaintiff, in May, 1928, entered into a contract for the construction of a Post Office Building in Southbridge, Mass. In accordance with the provisions of the materialmen's act (40 USCA § 270), the plaintiff gave a bond with the Metropolitan Casualty Insurance Company, as surety. In June, 1928, the plaintiff entered into a subcontract with the W. J. Devinney Company, a partnership, by the terms of which the company agreed to furnish all labor and materials necessary for the complete installation of the plumbing, gas piping, and steam heating required under the principal contract. To secure this subcontract, the W. J. Devinney Company, as principals, and the defendant, as surety, executed a bond in the penal sum of $8,332. The condition of the bond was that the principals should fully perform all the covenants, terms, conditions, and agreements of their contract with the plaintiff during the original term thereof or any extension which might be granted to the plaintiff, and likewise perform any and all duly authorized modifications of said contract, notice of which modifications were expressly waived by the surety, and should "promptly make payment to all persons supplying the principal with labor and materials in the prosecution of the work provided for in said contract, and any such authorized extension or modification thereof * * *."

The contract, the performance of which was secured by the defendant's undertaking, provided that the Devinney Company should not assign the contract without the written consent of the plaintiff, and by its express terms the Devinney Company for *themselves, their successors and assigns*, agreed to the full performance of the covenants contained in the contract. The contract also embraced the following clause:

"If there shall be evidence at any time of any claim for which, if established, the Contractor might become liable or might be a charge against the bond furnished by the Sub-Contractor, then the Contractor shall have the right to retain from any payment then due or thereafter to become due an amount sufficient to indemnify him completely against such claim, including counsel fees and other expenses of contesting the same."

The Devinney Company, while carrying on business as a partnership, went forward with its contract with the plaintiff, and in furtherance thereof entered into contracts with the Rhode Island Covering Company and G. C. Winter Company for labor and material required by the contract. Before the labor and material had been furnished by these two materialmen, the Devinney Company organized as a corporation which continued the work without interruption and without any change of management. The contract which the partnership had made with the plaintiff was never canceled. The plaintiff did not assent to any assignment of the contract; in fact, it was not aware of the organization of the corporation until after the work was done, and whatever payments had been made under the contract had been made to the partnership.

It also seems to be admitted that the defendant did not learn of the change into corporate form until after the labor and materials had been furnished by the Covering Company and the Winter Company.

On March 11, 1930, the Rhode Island Covering Company, having furnished labor and material in the construction of the Post Office Building, brought proceedings against the plaintiff and the Metropolitan Casualty Insurance Company, under the provisions of the said materialmen's act. The G. C. Winter Company intervened in those proceedings. The Devinney Company, as copartners, also intervened and sought to establish a claim for a balance due. They and the defendant were later joined as parties defendant in the same proceedings, whereupon they appeared and answered to the two claims. The defendant was represented at the hearings and participated in the trial. The Rhode Island Covering Company, in said proceedings, established its claim for $570 with interest, and the G. C. Winter Company established its claim for $1,857.60 with interest.

The defendant was given notice of these claims and was requested by the Metropolitan Casualty Insurance Company to take on the defense. Due demand was made upon the defendant to pay the judgments that were rendered in favor of these claimants in the proceedings brought against the plaintiff and the Metropolitan Casualty Insurance Company. This demand was refused, and the plaintiff was obliged to pay the Rhode

Island Covering Company $659.20 and the G. C. Winter Company $2,024.08. It was determined in the earlier proceedings that the Devinney Company had delayed in the performance of their contract and that the plaintiff had suffered damages from such delay in the sum of $300.

■ Inasmuch as the defendant was a party to the proceedings originally brought under section 270 of title 40, USCA, and participated in the hearing, it must be held that the defendant is bound by the adjudications in the earlier proceeding, so far as they established the claims of the two claimants and assessed the damages for breach of contract. The further fact that the plaintiff was not indebted to the Devinney Company is also adjudicated. The defense principally relied upon rests upon the fact that during the prosecution of the work, the W. J. Devinney Company, the principal on defendant's bond, transferred its business and assets to the W. J. Devinney Company, Inc., a corporation. On this issue the case is ruled by Illinois Surety Company v. John Davis Company, 244 U. S. 376, 37 S. Ct. 614, 616, 61 L. Ed. 1206. That was a case arising on a bond required by the materialmen's act (33 Stat. 811, 40 USCA § 270) to secure performance of a contract with the United States for work on a public building. The contractor, an individual, during the progress of the work, transferred all his assets to the Schott Engineering Company, a corporation, which continued the work covered by the contract. Neither the obligee nor the surety company was advised of the transfer, which left the management and conduct of the business unchanged. The surety sought to escape liability because of the incorporation, on the ground that its bond did not provide protection to those who had furnished labor and material to the corporation. The court held that at most the transfer was an informal subletting, remarking: "But the claims in question were in a very practical sense furnished *him*—as well as the Engineering Company. He remained liable on the contract; and no one else was known to United States. Furthermore, if the attention is to be directed to the precise wording of the bond, it should be noted that it refers to Schott, 'his or their heirs, successors, executors or administrators'; and the Engineering Company may properly be deemed a successor. The argument that the surety's risk ought not to be increased by holding it liable for the default of strangers to the original contract is of no greater force in the case of an assignee than it is in that of the subcontractor."

I can find no legitimate grounds upon which to distinguish that case from the case at bar. While it may not have been required by the materialmen's act, defendant's bond nevertheless was in its terms similar to bonds given under the statute; indeed, the conditions of the bond were almost identical with those in the bond given by the plaintiff and the Metropolitan Casualty Insurance Company to the United States. The defendant not only undertook to secure the performance of the contract, with any extensions and modifications thereof, but it also undertook to see that all persons supplying the principal with labor and material were paid. In this case, as in the Illinois Surety Company Case, there was no change in the management or in the conduct of the business of the principal. The partnership remained liable on the contract. The plaintiff did not know, and had no reason to believe, that there had been a change of ownership. It supposed at all times while the work was in progress that it was dealing with a partnership. Furthermore, the contract, to secure which the bond was given, was by its express terms binding upon the successors of the W. J. Devinney Company, and it cannot be argued that the corporation was not in every sense of the word the successor to the copartnership.

It may well be, as I have intimated above, that there was no statute compelling the plaintiff to require its contract with the Devinney Company to be secured by a surety bond, but it elected to do so, and the bond, to all intents and purposes, was given to protect those who furnished labor and material upon a public building of the United States who could not establish a lien upon the building.

■ Every reason exists for applying to such a bond the same liberality of construction which has been given to bonds furnished under the statute and for refusing to apply the rule of strictissimi juris, Illinois Surety Company v. John Davis Company, supra, especially since it does not appear that the defendant surety company was in any way prejudiced by the transfer of business from a partnership to a corporation.

It follows, therefore, that the defendant must be held liable upon its bond with the plaintiff to the extent of the sums which have been paid to satisfy claims of those furnishing labor and material to the principal and

to the extent of damages sustained by the plaintiff by reason of the failure of the Devinney Company to perform its contract, which damages have already been determined to be $300. The declaration also seeks to recover the expenses of defending the earlier proceedings, brought under the materialmen's act; but since no evidence has been offered showing the value of such services, it is not necessary for me to determine whether that item could properly be included in the recovery.

Judgment for the plaintiff may be entered for the aggregate of the following sums:

$2,869.78, with interest on $2,828.76 from the date of the writ;

$307.50, with interest on $300 from the date of the writ.