The **UNITED STATES of America for the Use and Benefit of MALPASS CONSTRUCTION COMPANY, Inc., a Virginia Corporation, Plaintiffs,**

v.

**SCOTLAND CONCRETE COMPANY, Inc., a North Carolina Corporation, and Hartford Accident and Indemnity Company, a Connecticut Corporation and Ballard's Crane Service, Inc., a Virginia Corporation, Defendants.**

Civ. No. 583.

United States District Court
E. D. North Carolina,
Elizabeth City Division.

Dec. 5, 1968.

**1300**

Joseph J. Flythe, Ahoskie, N. C., for plaintiffs.

Hall & Hall, Elizabeth City, N. C., for defendants.

## OPINION

KELLAM, District Judge.

Plaintiff filed this Miller Act[1] action against Scotland Concrete Company, Incorporated (Scotland), the prime contractor, Ballard Crane Service, Incorporated (Ballard), a sub-contractor, and Hartford Accident and Indemnity Company (Hartford), surety on the prime contractor's bond given pursuant to the provisions of the Miller Act.[2]

Scotland entered into contract with the United States to construct sewage treatment facilities at the Coast Guard Air Base in Elizabeth City, North Carolina. Thereafter, Scotland contracted orally with Ballard to furnish certain materials and install steel sheet piling, excavate, when work had been done by others, to come back and pull the piling and do backfilling. After Ballard commenced the work, and when it appeared the use of the equipment and performance of the work would not be completed as quickly as had been first anticipated, Scotland agreed with Ballard to pay him some rent on use of materials and equipment if the work was not completed in 60 days.

Ballard rented from use-plaintiff (plaintiff) quantities of steel sheet pil-

---

1. 40 U.S.C.A. §§ 270a through 270d.　2. Id.

ing at a rental of $50.00 per ton for the first month for some portions thereof, and $100.00 per ton per month for the first month for other piling, and for each succeeding month the rental was $4.00 per ton per month until returned, plus market value of any part which could not be re-trimmed, and where it could be re-trimmed, the cost of the re-trimming, etc. Ballard took possession of the material in June 1966. It was not returned or ready for return until January 6, 1967. Thereafter, plaintiff spent approximately two weeks in cleaning and trimming the damaged piling. So far as the record discloses, Ballard has been paid in full by Scotland. No dispute exists as to the correctness of plaintiff's claim of $2,836.11.

Ballard has not appeared or answered this action, although duly served.

Scotland did not know Ballard had rented the piling from plaintiff until March 1, 1967, when it was notified of the plaintiff's claim. Around November 1, 1967, Scotland notified Ballard it had completed its work in the area where the steel piling had been installed and that Ballard might remove the piling and commence the backfilling. However, the piling was not removed until the end of December or the first of January. After the piling was returned to plaintiff and payment was not made, on March 1, 1967, plaintiff notified Scotland, with copy to the agent for the bonding company, Ballard, and the Coast Guard. On March 7, 1967, the agent for the bonding company advised plaintiff he had discussed the matter with Scotland and Scotland would contact plaintiff. On March 16, 1967, plaintiff addressed a letter to the agent for the bonding company with copies to the other parties advising Scotland had not contacted plaintiff. On March 31, 1967, plaintiff wrote the bonding company direct. Each of the notices are sufficient to meet the requirements under the statute. Fleisher Engineering & Construction Co. v. United States, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12. In the case at bar it is stipulated each of the letters were timely received.

Scotland and Hartford contend the notice of March 1, 1967, is not timely. That is, it was not given within 90 days after the materials were furnished. They say the 90 day period begins to run from the date they notified Ballard it could commence removal of the piling and do the backfilling. Plaintiff says the time commences to run from the date the materials were returned to it, or ready for return to it. Scotland and Hartford further say that even if they are liable for the rental, they are not liable for the repairs to the steel piling, trimming, etc.

 The Miller Act is highly remedial in nature. It requires government contractors to execute a penal bond for the protection of "all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person." 40 U.S.C.A. § 270a(a) (2). It is entitled to a liberal construction and application in order to properly effectuate the intent of Congress to protect those whose labors and materials go into public projects or contribute to the prosecution of the work. United States v. Carter, 353 U.S. 210, 216, 77 S.Ct. 793, 1 L.Ed.2d 776; MacEvoy Co. v. United States, 322 U.S. 102, 104–105–107, 64 S.Ct. 890, 88 L.Ed. 1163; Fleisher Engineering & Construction Co. v. United States, 311 U.S. 15, 18, 61 S.Ct. 81, 85 L.Ed. 12; Noland Co. v. Allied Contractors, Inc., 273 F.2d 917, 920, 921 (4th Cir. 1959). The Act not only covers those "furnishing labor and materials directly to the prime contractor, but also cover[s] those who contribute labor and materials to subcontractors." MacEvoy v. United States, supra [322 U.S. 105, 64 S.Ct. 892]; United States for use of Hill v. American Surety Co., 200 U.S. 197, 204, 26 S.Ct. 168, 50 L.Ed. 437; Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 383, 37 S.Ct. 614, 61 L.Ed. 1206.

██ A claim for rental use of equipment and for repairs to the equipment is covered by the Miller Act and the bond executed pursuant thereto. Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 383, 37 S.Ct. 614, 61 L.Ed. 1206;

United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell, 293 F.2d 816, 818 (9th Cir. 1961); Moran Towing Corp. v. M. A. Gammino Construction Co., 363 F.2d 108, 115 (1st Cir. 1966); Roane v. United States Fidelity & Guaranty Co., 378 F.2d 40, 43 (10th Cir. 1967); Massachusetts Bonding & Ins. Co. v. United States, 88 F.2d 388, 389 (5th Cir. 1937). In Illinois Surety Co. v. John Davis Company, supra [244 U.S. 383, 37 S.Ct. 617] the Court said:

> The specific objection made to the claim of the United States Equipment Company, for rental of cars, track, and equipment used at the Naval Training Station and the expense of loading the plant and freight thereon to and from the station, is also unfounded. The Surety Company contends that this is not supplying "labor and materials." The equipment was used in the prosecution of the work. Material was thus supplied, although a loan serving the purpose, no purchase of it was made. The expense of loading and freight was properly included with the fixed rental as recoverable under the bond. Title Guaranty & Trust Co. v. Crane Co., 219 U.S. 24, 34, 31 S.Ct. 140, 55 L.Ed. 72.

■ The issue then turns as to when the notice period provided by Title 40 U.S.C.A. § 270b begins to run. That section provides that every person who has furnished labor or materials "in the prosecution of the work" provided for in the contract who has not been paid in full therefor before the expiration of a period of 90 days "after the day on which the last of the labor was done * * * or material was furnished or supplied by him for which such claim is made" shall have a right to sue on such payment bond. The time for giving such notice begins to run from the date the equipment was last available for use. In this case, the date is January 18, 1967. In fact, the equipment was in use until that date when the sheet piling was pulled and returned to plaintiff. In United States ex rel. Carter-Schneider-Nelson Inc. v.

Campbell, 293 F.2d 816, 820 (9th Cir. 1961), cert. denied 368 U.S. 987, 82 S.Ct. 601, 7 L.Ed.2d 524, in dealing with this question, the Court said:

> We hold the correct solution of the problem is the one advanced by appellant. It contends that the notice period runs from the time the equipment was last available for use on the project. In the instant case, the parties agreed by stipulation that December 5, 1956, was the last day on which any of the leased equipment was at the Travis job site.

To the same effect, Friebel and Hartman, Inc., etc. v. United States for use of Codell Construction Co., 238 F.2d 394, 395 (6th Cir. 1956).

In United States v. Western Electric Co., 337 F.2d 568, 572 (9th Cir. 1964), in dealing with the time when the 90 day notice begins to run, said:

> We do not find the phrases "substantially performed" or "substantially completed" used in any of the decided cases. A more accurate statement of the test to be applied is whether the work was performed and the material supplied as a "part of the original contract" or for the "purpose of correcting defects, or making repairs following inspection of the project". See United States v. Gunnar I. Johnson & Son, Inc., 8 Cir. 1962, 310 F.2d 899, where the court held that two bus duck elbows were component parts of an electrical equipment distribution system, although there was no evidence "as to the cost or value of such elbows, or as to whether they were of major or minor importance".

The said material and/or equipment having been available for use until January 18, 1968, the 90 day period began to run from that date. Hence, each of the notices given on March 1, 1967, March 16, and March 31, 1967, were within said 90 day period.

■ Scotland and Hartford's contention that the cost of repairing and replacing the lost and/or damaged piling does not come within the statute and the

terms of the bond is without merit. Illinois Surety Co. v. John Davis Co., supra; Roane v. United States Fidelity & Guaranty Co., supra; Moran Towing Corp. v. M. A. Gammino Construction Co., supra. In this last cited case, the Court at page 115, 363 F.2d, said that "in the case of rented equipment, not only does the surety's obligation include the rental, but if the principal has undertaken to repair, or to assume the expense of ordinary wear and tear, its failure to perform in this respect may be a matter covered by the bond."

Scotland's contention that it has paid Ballard in full is of no moment, as was said in Illinois Surety Co. v. John Davis Co., supra [244 U.S. 380, 37 S.Ct. 616], "he who has supplied them [labor and materials] to a subcontractor may claim under the bond, even if the subcontractor has been fully paid." See also Mankin v. United States to Use of Ludowici-Celadon Co., 215 U.S. 533, 30 S.Ct. 174, 54 L.Ed. 315.

Hence plaintiff is entitled to judgment against Ballard, Scotland, and Hartford for $2,836.11 with interest from March 31, 1967. If payment is made by Hartford, it shall be entitled to judgment over against Scotland and Ballard, and upon payment by Scotland, it shall be entitled to judgment over against Ballard.