567 F.2d 951
 97 L.R.R.M. (BNA) 2204, 82 Lab.Cas. P 10,258
 TRUSTEES OF the CARPENTERS & MILLWRIGHTS HEALTH BENEFIT
TRUST FUND, Trustees of the Centennial State Carpenters
Pension Trust Fund, Trustees of the Colorado Carpenters
Vacation Trust Fund, Trustees of the Colorado Carpenters
Joint Apprenticeship Trust Fund, Plaintiffs-Appellants,
v.
KIPCO, INC., a Colorado Corporation, and American Employers
Insurance Company, Defendants-Appellees.
 No. 76-1754.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted Nov. 16, 1977.
Decided Dec. 23, 1977.
 
 Brian T. Campbell of Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for appellants.
 W. Robert Ward of Weller, Friedrich, Hickisch & Hazlitt, Denver, Colo., for appellees.
 Before SETH and BARRETT, Circuit Judges, and ROGERS, District Judge.*
 BARRETT, Circuit Judge.
 
 
 1
 Trustees of the Carpenters & Millwrights Health Benefit Trust Fund, et al., (Trustees) appeal from an order and judgment of dismissal after trial to the court. Trustees had sought recovery on a surety bond issued by defendant-appellee, American Employers Insurance Company (American).
 
 
 2
 In 1971, one David R. Johnson (Johnson) was in the construction business operating under the name of "David R. Johnson dba Kipco." On December 23, 1971, Johnson entered into a collective bargaining agreement with the Carpenters District Council of Denver covering the period May 1, 1969 through April 30, 1972. This agreement was signed "KIPCO by David R. Johnson," with an indicated address of 669 Lipan, Denver, Colorado.
 
 
 3
 Under the agreement Johnson agreed to pay certain sums into four union trust funds. Article XIX of the agreement, entitled "Fringe Benefit Bond," also required Johnson to furnish a $3,000 bond to secure payment into the trust funds. Article XIX provided, inter alia:
 
 
 4
 Each Employer signatory to or bound by this Agreement shall furnish a Carpenters Fringe Benefit Payment Bond in face amount of Three Thousand Dollars ($3,000) in favor of Fund Administrative Associates, the designated administrator. . . . (Emphasis supplied.)
 
 
 5
 On January 1, 1972, Johnson obtained a carpenters fringe benefit payment bond, Bond No. AC 71016-18, from American. The bond provided, inter alia:
 
 
 6
 . . . that we, David R. Johnson dba Kipco of 669 Lipan St., Denver, Colorado, as principal, and AMERICAN . . . as surety, are held and firmly bound unto the . . . ADMINISTRATOR . . . as Obligee. . . .
 
 
 7
 WHEREAS, THE CONDITION OF THIS OBLIGATION IS SUCH, an agreement was entered into on the first day of May, 1969, between David R. Johnson dba KIPCO and the above-named Obligee which stated that certain fringe benefit payments shall be paid to them.
 
 
 8
 NOW, THEREFORE, if the Principal shall well and truly make proper payment in accordance with the Union Agreement dated May 1, 1969, then the obligation shall be void, otherwise to remain in full force and effect.
 
 
 9
 On April 30, 1972, the collective bargaining agreement between Johnson dba Kipco and the Carpenters Council, for which Johnson had obtained Bond No. AC 71016-18, expired by its own terms.
 
 
 10
 On June 26, 1972 Bond No. AC 71016-18 obtained for the May 1, 1969 through April 30, 1972 collective bargaining agreement, was increased from $3,000 to $10,000. Fund Administrative Associates, obligees of the bond, were notified directly by American that:
 
 
 11
 It is understood and agreed that effective June 26, 1972 the Bond is hereby increased to $10,000. All other conditions of the bond remain the same. (Emphasis supplied.)
 
 
 12
 (R., Pl.Ex.No. 1, Ex.A.)
 
 
 13
 The record, as noted by the trial court, offers no explanation as to why the bond was increased.
 
 
 14
 On July 20, 1972 Johnson incorporated his business under the name of Kipco, Inc. All of the assets and liabilities of David R. Johnson dba Kipco were transferred to Kipco, Inc. Thereafter Johnson owned two-thirds of the capital stock of Kipco, Inc. and the remaining one-third was owned by one John Teegardin.
 
 
 15
 On October 16, 1972, Kipco, Inc., through Johnson, acting as its president, entered into a collective bargaining agreement with the Carpenters District Council of Denver for the period of May 1, 1972 through April 30, 1975. This agreement was signed "Kipco, Inc." by "David R. Johnson, President" with an indicated address of 4573 Pecos Drive, Denver. Under this agreement, Article XX, entitled "Fringe Benefit Bond," set forth the bonding requirements imposed upon Kipco, Inc. to secure its contributions to various union trust funds. Article XX provided in part:
 
 
 16
 Each Employer signatory to or bound by this Agreement shall furnish a Carpenters Fringe Benefit Payment Bond or a letter of credit or such other and similar security as may be approved. . . . in the face amount of THREE THOUSAND DOLLARS ($3,000.00) . . .. (Emphasis supplied.)
 
 
 17
 Kipco, Inc. did not obtain a bond "or a letter of credit or such other and similar security as may be approved" for the May 1, 1972 through April 30, 1975 collective bargaining agreement. Rather, Kipco, Inc. continued to remit on Bond No. AC 71016-18 obtained by David R. Johnson dba Kipco for the May 1, 1969 through April 30, 1972 collective bargaining agreement.
 
 
 18
 In June, July, August, September and October of 1974, Kipco, Inc. failed to pay its contributions to the various trust funds in accordance with the May 1, 1972 through April 30, 1975 collective bargaining agreement. Suit was initiated by Trustees against Kipco, Inc. American was named as a party defendant in an amended complaint. Trustees were granted a judgment against Kipco, Inc. but their action and claim against American, as surety, was dismissed. In dismissing, the trial court found:
 
 
 19
 We infer from the actions of the defendant in increasing the bond coverage (June 26, 1972) and accepting premium payments after the agreement . . . expired by its terms on April 30, 1972, that defendant (American) knew or assumed that a new agreement had been or would be entered into between Johnson and the Union which required a bond to secure the payment by Johnson of fringe benefits under the new agreement.
 
 
 20
 But there is no evidence that the defendant bonding company was aware of the fact that Johnson had conveyed his business to Kipco, Inc., or that Kipco, Inc. and not Johnson had executed a new agreement with the union.
 
 
 21
 There is no evidence which would sustain a finding by the court that the defendant bonding company either expressly or impliedly agreed to substitute Kipco, Inc. as its principal of the bond in lieu of Johnson. Exhibit 5 (May 1, 1972 through April 30, 1975 collective bargaining agreement) was a new agreement executed by Kipco, Inc., an agreement to which Johnson was not a party and for the performance of which Johnson never was legally responsible.(R., Vol. IV, p. 20.)
 
 
 22
 On appeal Trustees contend the trial court erred in holding that: (1) American, as surety, was not liable for the default of Kipco, Inc., the successor principal, since American did not have knowledge of or consent to a change in principal; (2) there was insufficient evidence to find that American had expressly or impliedly agreed to substitute Kipco, Inc. as its principal; and (3) there was insufficient evidence to hold that American was aware that David R. Johnson dba Kipco, as the original principal, had conveyed his business to Kipco, Inc.
 
 I.
 
 23
 Trustees argue that the trial court erred when it ruled, as a matter of law, that American was not liable as a surety for the defaults of Kipco, Inc., the successor principal, by virtue of the fact that American did not have knowledge of or consent to a change in principals. Trustees recognize that, generally, a surety will not be liable for the default of a new principal to whose substitution it has not consented.
 
 
 24
 Trustees argue, however, that under Illinois Surety Company v. John Davis Company, 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1917), a surety may be held liable for the default of a successor organization, "despite the fact that the surety had no knowledge of, and thus did not consent to, bonding the successor organization." Illinois Surety, supra, is inapposite. The facts therein were limited to a bonded sole proprietor working on a government contract who later incorporated without changing the management and conduct of the business. Significantly, there was one bond issued for one contract.
 
 
 25
 In the instant case, we are dealing with two collective bargaining agreements, one executed by "David R. Johnson dba KIPCO" and one executed by "Kipco, Inc. by David R. Johnson, President." Only one surety bond, Bond No. AC 71016-18, was issued, and it was issued exclusively for the May 1, 1969 through April 30, 1972 collective bargaining agreement. Although Bond No. AC 71016-18 was later increased to $10,000 on June 26, 1972, it provided that "All other conditions of the Bond remain(ed) the same." This bond, then, was never transferred thereafter from the May 1, 1969 through April 30, 1972, collective bargaining agreement, notwithstanding the fact that the agreement expired by its own terms on April 30, 1972. Although the record is silent on this, we can speculate as easily that the parties agreed to increase the bond coverage by reason of likely "inflated" liability potential under the expired agreement (as distinguished from expired liability on the bond) as we can speculate that the parties intended the increased bond to apply to the new collective bargaining agreement. In any event, the parties did not develop the record on this point. It is puzzling to us why the parties permitted such a "gap" to occur.
 
 
 26
 We need not speculate on whether or not a bond was ever acquired for the May 1, 1972 through April 30, 1975 collective bargaining agreement. Johnson testified on cross-examination:
 
 
 27
 Q Do you have any recollection of contacting American Employers to ask them for a transfer of the bond on which they were surety for you, individually, to your corporation, Kipco, Inc.?
 
 
 28
 A No recollection.
 
 
 29
 Q You did, subsequent to the incorporation of Kipco, Inc., in July of 1972, enter into Exhibit 5, the agreement with the Denver District Carpenters Union, is that correct?
 
 
 30
 A Yes.
 
 
 31
 Q Did you get a bond specifically referring to this agreement that you recall?
 
 
 32
 A I don't recall.
 
 
 33
 (R., Vol. 1, p. 21.)
 
 
 34
 Thereafter, the burden fell upon the union to avail itself of the remedies set forth in Article XX of the May 1, 1972-April 30, 1975 collective bargaining agreement:
 
 In the event an Employer fails to furnish:
 
 35
 (a) A Carpenters Fringe Benefit Payment Bond (or other suitable security), or(b) An additional Carpenters Fringe Benefit Payment Bond (or other suitable security) within ten (10) days after requested in accordance with the above procedure,
 
 
 36
 the Union shall be relieved of all obligations under this Agreement insofar as concerns such Employer. In addition, in order to preserve its own interests and protect its members, immediately upon knowledge of any such event, the Union shall authorize and direct its members to refuse to work for such Employer.
 
 
 37
 (R., Pl. Ex. 5, p. 10.)
 
 
 38
 Since the Union opted not to avail itself of the remedies set forth in Article XX of the agreement relating to Kipco, Inc.'s failure to secure a proper bond, we cannot, particularly in view of the very limited record before us, unilaterally transfer Bond No. AC 71016-18 from the 1969-1972 agreement to the 1972-1975 agreement.
 
 
 39
 Findings of fact can only be set aside upon appeal if they are clearly erroneous. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); G.M. Leasing Corp. v. U. S., 514 F.2d 935 (10th Cir. 1975), cert. denied, 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975); Quarles v. Fuqua Industries, Inc., 504 F.2d 1358 (10th Cir. 1974). We thus hold that the trial court did not err in finding that American was not a surety for the defaults if Kipco, Inc., particularly when, as here, Kipco, Inc. did not apply for a surety bond, and American did not issue one for the 1972-1975 collective bargaining agreement term.
 
 II.
 
 40
 In view of the dispositive nature of Section I, we elect not to consider the additional allegations of error advanced by Trustees.
 
 
 41
 WE AFFIRM.
 
 
 
 *
 Of the District of Kansas, sitting by designation