**JAMES STEWART COMPANY,**
Appellant,

v.

**DENNETT–ROBERTSON ELECTRIC, INC.,** Appellee.

No. 16974.

United States Court of Appeals
Ninth Circuit.

May 31, 1961.

Eugene S. Ives, Martin J. Kirwan, Francis E. Smith, Los Angeles, Cal., and Wallace O. Tanner, Phoenix, Ariz., for appellant Stewart Co.

Anderson, McPharlin & Conners, Robert E. Jones, Los Angeles, Cal., for Dennett-Robertson Electric Inc.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

This case involves two disputes as to sums remaining due to a subcontractor (Dennett-Robertson Electric, Inc.) from the prime contractor (James Stewart Company) upon construction work performed for the United States Government at Edwards Air Force Base in Southern California. The action originally was brought under the Miller Act, 40 U.S.C. § 270b, against the parties to this appeal and their respective sureties by one who had furnished supplies upon the project. The subcontractor and prime contractor filed cross-claims against each other. The dispute with the materialman was settled and only those between these parties were litigated in the district court.[1]

These disputes involved various claims relating to extra work asserted to have been performed by the subcontractor. The underlying question was whether such work was in fact extra work or whether, on the contrary, it had been included within the original contract as modified by agreement. The judgment ultimately rendered took into consideration many items of claim and offset which are not here disputed as well as those which are the subject of this appeal. The result was a judgment in favor of Dennett-Robertson in the sum of $7,160.-67. Both parties have appealed, each appeal relating to a separate portion of the judgment.

The appeal taken by Stewart, the prime contractor, is from that portion of the judgment which recognizes a claim of the subcontractor in the sum of $9,017.85 for work performed in the data reduction building of the air force base. The court found that the reasonable value of the work performed was $10,217.32 and that the subcontractor had been paid the sum of $1,199.47. The prime contractor contended upon trial that the subcontractor had been paid in full since all but $1,-199.47 of the work involved had been included in prior agreements.

This appeal presents but one issue: whether the district court erred in rejecting as an exhibit the agreement between the prime contractor and the United States which allowed the prime contractor only $1,331.03 for the work in question and which had been offered in evidence by the prime contractor in support of its contention. We have concluded that this was not error.

On May 23, 1955, Stewart, as prime contractor, entered into its contracts

with the United States and with its electrical subcontractor, Dennett-Robertson. Thereafter work on the project commenced. During the course of the work numerous change orders were issued by the government modifying the original plans and specifications. The procedure normally followed in contract modification was as follows: The proposed change order would be submitted to Stewart by the government with a request for a bid. Stewart would obtain a bid from the affected subcontractor and upon that basis would submit its bid to the government. If acceptable to the government, a contract modification specifying the increase in compensation and the new total contract commitment would be executed by the government and by Stewart. Thereafter, a change order would be executed by Stewart and the subcontractor specifying the latter's increased compensation and the work would be performed in accordance with such agreement. This procedure was not followed on the occasion in question.

On March 25, 1957, the government issued the change order with which we are concerned, designated as "OC–5," and on April 3, 1957, forwarded it to Stewart with the request that Stewart submit its bid to the project engineer not later than April 15. It advised that work should not commence on the change until formally authorized. On April 8, Stewart requested a bid from Dennett-Robertson.

In the meantime, on April 5, the United States wrote to Stewart advising that work was to begin immediately with the formal contract modification awaiting completion of negotiations.

On April 10, Dennett-Robertson sent to Stewart its bid to do the electrical work covered by OC–5 for the sum of $10,217.32. On the same date Stewart wrote to Dennett-Robertson advising that work was to commence immediately. Dennett-Robertson heard no more from Stewart with reference to its bid and proceeded with the work. Subsequently the government rejected Dennett-Robertson's bid asserting that a substantial portion of the work covered by OC–5 had been

covered by an earlier change order, OC–1, and that as to such work OC–5 was merely duplication and clarification. The government then issued its contract modification allowing $1,331.03 for the additional electrical work. This contract modification was executed by Stewart, who then submitted its proposed change order to Dennett-Robertson under date of September 27, 1957, specifying $1,199.47 as the agreed additional compensation. Dennett-Robertson refused to execute the change order and continued to demand the full price it had bid, asserting that this was the reasonable value of the work performed and that OC–5 was not mere duplication of work covered by OC–1. The district court having both OC–1 and OC–5 before it found for Dennett-Robertson upon this factual dispute.

In support of its position Stewart sought to introduce in evidence the contract modification based upon OC–5 which it had entered into with the United States and which had fixed the price of $1,331.03 upon the additional work. The district court rejected the offer upon the ground that it was not binding upon Dennett-Robertson. Upon this appeal Stewart contends that the document was importantly relevant for the reason that it demonstrates the fact that the work ordered was largely duplication.

We fail to see how the contract document demonstrates this fact any more clearly than OC–5 does. OC–5 was attached to and made a part of the contract document. The only significant difference between the two lies in the fact that in the contract document a price was fixed. It was only on the basis of OC–5 that the work in question was done by Dennett-Robertson.

We conclude that it was not error to reject the offer of this evidence. The district court must be affirmed upon Stewart's appeal.

The cross-appeal taken by Dennett-Robertson relates to work done upon the base's air conditioning system. Again, in the district court the underlying issue was whether this work was extra or was covered by contract.

**150**

The court found the value of the work done to be $16,936.75 and that it was not included in work specifications to which Dennett-Robertson was committed under its subcontract.

 When ordered to do the work, Dennett-Robertson had protested that this work, relating to the control devices of the air conditioning system, was included within the subcontract of the air conditioning subcontractor and was not included in Dennett-Robertson's electrical subcontract. The district court found in accordance with this contention. There was testimony to the effect that the air conditioning work was divided between the air conditioning and electrical subcontracts on, roughly, a 70%-30% basis. From this the district court apparently concluded that notwithstanding the fact as found, that the work in question was not included in its subcontract, Dennett-Robertson had somehow committed itself to do 30% of it.[2] Upon this claim the judgment recognized Dennett-Robertson as entitled to the sum of $11,855.73, this sum being 70% of the value of the work performed.

In our view, the court erred in this respect. The judgment must be modified to effect an increase in Dennett-Robertson's recovery to the full value of the work performed as found by the court: an increase of $5,081.02.

Dennett-Robertson also appeals from failure of the district court to allow interest upon the judgment awarded. It relies upon § 3287 of the California Civil Code, which allows interest upon "damages certain, or capable of being made certain by calculation."

 This was not error. Dennett-Robertson's suit was not upon an express contract, but was for the reasonable value of its services. Under the rule recognized in California, such a claim not being liquidated does not bear interest. See 14 Cal.Jur.2d 715, § 90.

Upon the appeal of James Stewart Company judgment is affirmed. Upon the cross-appeal of Dennett-Robertson Electric, Inc., it is ordered that judgment in favor of Dennett-Robertson be increased from the sum of $7,160.67 to the sum of $12,241.69.

2. The court found with reference to work in certain specified buildings: "That the said air-conditioning control work requested by Stewart was not included in either the aforesaid written subcontract agreement or in any Change Order issued by Stewart relating thereto. * * * That the reasonable value of said work so performed by Dennett-Robertson was and is the sum of $4,488.28. * * * That the air-conditioning work upon the project is 70% of a mechanical nature and 30% of an electrical nature. That by reason thereof Dennett-Robertson is entitled to recover from Stewart as and for the reasonable value of said work 70% of the aforesaid sum of $4,488.28, or the sum of $3,141.80 * * *." This was followed by further identical findings with reference to work in another building of a value of $12,448.47, for which Dennett-Robertson was allowed $8,713.93.