UNITED STATES of America ex rel. CARTER–SCHNEIDER–NELSON, INC., a corporation, Appellant,

v.

Jack T. CAMPBELL, doing business as Campbell Construction and Equipment Company, and Fidelity and Casualty Company of New York, a corporation, Appellees.

UNITED STATES of America ex rel. CARTER–SCHNEIDER–NELSON, INC., a corporation, Appellant,

v.

Jack T. CAMPBELL, doing business as Campbell Construction and Equipment Company, and Phoenix Assurance Company of New York, a corporation, Appellees.

Nos. 17181, 17182.

United States Court of Appeals
Ninth Circuit.

Aug. 17, 1961.

Anderson, McPharlin & Conners and Kenneth E. Lewis, Los Angeles, Cal., for appellant.

Thomas E. Davis, Arthur M. Bohnert, Jr., Bohnert & McCarthy and Dudley Harkleroad, Barrett, Lucy & Harkleroad, San Francisco, Cal., for appellees.

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

These are two suits under the Miller Act. Jurisdiction in the trial court was based upon 40 U.S.C.A. §§ 270a through 270d. Jurisdiction in this court rests upon 28 U.S.C. § 1291.

Appellant is a lessor of earth moving equipment. In March 1956 it leased such equipment to Anderson-Kerber Co., a subcontractor engaged in work on public works projects at Fort Funston and Travis Air Force Base. The prime contractor on both projects was appellee Campbell Construction and Equipment Company (Campbell). The original lease arrangement contemplated use of the machinery at Fort Funston and not

elsewhere. but a subsequent oral modification provided that the subcontractor could use the equipment at Travis.

After the subcontractor had been in default on the rent for several months, appellant brought an action, under the Miller Act (40 U.S.C.A. §§ 270a through 270e), against Campbell, the general contractor, and Fidelity and Casualty Company of New York (Fidelity), the surety on the Fort Funston project. A separate Miller Act action was brought against Campbell and Phoenix Assurance Company of New York (Phoenix), the surety on the Travis project. The two actions were consolidated for trial but were concluded by separate judgments.

Appellant was granted no relief in the action against Phoenix. The court held that appellant had not given timely notice of his claim as required by the Miller Act. In the action against Fidelity, appellant was awarded a judgment in the sum of $7,273.33 for the reasonable value of the machinery used at Fort Funston. Appellant has taken appeals from both judgments.

### I—Appeal of the Action Against Fidelity:

A. In this appeal appellant claims that the judgment in its favor was insufficient in amount. Further, appellant claims, the court erred in not awarding it pre-judgment interest on the judgment recovered.

Appellant contends that it should receive rental payments for the total period during which the equipment was out of its possession. Appellant notes that it rented the equipment to a single subcontractor working under a single prime contractor. It would not be faced with its present difficulty, it maintains, were it not for the facts that the equipment was used on two jobs and that the prime contractor chose a different surety for each job.

■ Appellant does not contend, however, that the surety on the Funston project should be held for the whole amount of rental allegedly due for equipment used on both projects. It admits

that such a result would be inequitable. Furthermore such a result would be beyond the contemplation of the Act. 40 U.S.C.A. § 270b makes the surety liable only for material supplied in connection with the bonded project.

■ Appellant does contend, however, that the amount awarded it in connection with the Funston project was inadequate. The court granted a judgment of $7,-273.33 against Fidelity; while appellant claims that it is entitled to a judgment of $9,654.11. The court's computation of the unpaid rent is in error, appellant claims, because it is based upon the *actual use* of the equipment at the Funston project; appellant should be compensated, it contends, for the time during which the equipment was *available* for use at Funston, even if it was not actually used all the time. This, however, is a false issue (and the battle of case authority which the parties have engaged in with respect to it is irrelevant), for the court's computations purport to award rent for the time during which the equipment was "located at" Funston (Findings IV and V, especially at pp. 67 and 69 of the Record, Volume I in appeal No. 17181). And it does not appear that "available at" means anything other than "located at," especially when it is noted (as will be seen below) that appellant's computation of the "availability" of particular equipment at various places corresponds significantly and almost precisely with the court's computation of when the equipment was "located at" those places. We note that appellant has not explicitly attacked the court's findings with respect to the location of the equipment at various relevant times, nor has it alleged that those findings are not supported by substantial evidence.

The disagreement between the court's figure and appellant's can be understood only by comparing their methods of computation. The manner in which appellant finally arrived at its figure of $9,654.11 appears on page 26 of its Opening Brief. There it notes that the total rental for the two items of equipment which were used in part at Funston was $17,766.67.

It would then *allocate* to the Funston project a portion of this total rental in accordance with its calculation of the time during which the equipment was available for use at Funston. It determined that the two tractors in question were "available" for use at Funston for a total of two hundred and thirty-two days and at Travis for a total of two hundred and seventy-six days, a grand total of five hundred and eight days. So, appellant apportions to Funston 232/508 of the total rental on the two tractors. Interestingly enough, the courts computation (See Record, Vol. I in appeal No. 17181, p. 67) establishes that the two tractors were located (and therefore available for use) at Travis and Funston for a grand total of five hundred and seven days, the period of availability at Funston being two hundred and fifty days, eighteen days *more* than the period revealed by appellant's calculations. Yet the court arrived at a rental figure substantially lower than that computed by appellant. This is because the court's computation takes into account the fact that all rent was paid through May 27, 1956. The court limited its award to rent accruing after that date. Thus Tractor No. 1 was located at Funston for only one hundred and seven days after May 27th, and only the rent accruing during this time was allowed. Similarly Tractor No. 2 was located at Funston for only fifty-seven days after May 27th, and the court allowed recovery only for rent accruing during this period. Appellant's computation also takes into account the rent paid prior to May 27th; but it apportions this rent to each of the six items in the proportion which the total rent paid bears to the total rent due. (See Appellant's Opening Brief, p. 25.) The total rent paid, $12,232.00 is approximately twenty-two and sixty-four one hundredths per cent of the total rent due, $54,024.33. For that reason appellant allocated $2,400 of the total rent paid to "Cat. [i. e., Tractor] #2" and a like amount to "Cat. [Tractor] #3," because this figure is twenty-two and sixty-four one hundredths per cent of the total rent

due ($10,600) for each of these items. There is no compelling reason to accept appellant's method of calculation, for not all of the items were used for the same period of time before May 27th, and the items used at Fort Funston were in use before May 27th for a longer time than any other items. (For example, Cat. #3 which was not put in use until April 17, 1956 (see Record, p. 67) receives as much rent-paid credit ($2,400) under appellant's computation as Cat. #2 which was put in service on March 27, 1956). The court's method of computation is entirely accurate: it permits appellant to recover all rent accruing on those items located at Funston after May 27, 1956. And appellant has received all the pre-May 27th rent accruing on such items.

Appellant's claim for additional compensation has nothing to do with its contention that the court based its findings on the "use" rather than the "availability" of the equipment. Appellant's numerous case citations on this issue are, therefore, not in point.

### B. Interest.

The trial court refused to award pre-judgment interest to appellant on its recovery. Appellant claims that this was error, relying on Cal.Civ.Code § 3287 which permits the recovery of interest on damages from the time that the right to such damages becomes vested. Such pre-judgment interest is recoverable, however, only if the damages are certain or capable of being made certain by calculation. The court, in the instant case, held that the amount claimed was in dispute and uncertain because plaintiff sought, in each complaint, rental in excess of any possible amount that it was entitled to recover. Appellant counters that it had no choice but to claim the full amount of unpaid rent against both sureties for it then had no access to the records of the subcontractor and therefore no basis for allocating the rental charges between the two jobs. Whatever the reason behind appellant's position may be, it is clear, in view of the hot dispute over the proper principle of al-

locating the rent already paid, that the amount due appellant could not be made certain by mere calculation. The court was correct in refusing interest on the ground that the claim was unliquidated (see James Stewart Co. v. Dennett Robertson Electric, Inc., 9 Cir., 1961, 291 F. 2d 147).

We affirm the judgment of the trial court in the appeal number 17181 arising out of the action against Fidelity.

### II—Appeal in the Action Against Phoenix:

■ The Miller Act provides (40 U.S. C.A. § 270b) that a claimant seeking recovery for materials provided to a subcontractor must give written notice to the prime contractor, "within ninety days from the date on which such person * * supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed * * *." The giving of such notice is a condition precedent to a supplier's right to sue on the payment bond. Bowden v. United States, 9 Cir., 1956, 239 F.2d 572, 577, certiorari denied 353 U.S. 957, 77 S.Ct. 864, 1 L.Ed.2d 909. Appellee Phoenix asserted that appellant failed to give the notice required by the Miller Act and that therefore its claim was barred. The trial court agreed.

A. The first problem in this appeal is to determine when the time for giving notice expired. Appellee asserts that the ninety days begins running when the lessor delivers the equipment. Since the last equipment supplied to the Travis job was delivered on May 17, 1956, the last date for giving notice, appellee claims, is August 17, 1956. Appellee's view is based upon an analogy to the furnishing of materials, since the Miller Act itself, does not in so many words deal with the furnishing of equipment. With respect to materials the crucial date to start the notice period is, of course, the date the materials are delivered. So, by analogy appellee arrives at the conclusion that the crucial date for equipment is the date the equipment is delivered.

The lack of merit in appellee's position seems obvious. Delivery of the materials completes the seller's obligation, and full payment becomes due either at once or at a specified time thereafter. Delivery of equipment under a lease, on the other hand, is only the beginning of the lessor's obligation. He must allow the equipment to remain in the hands of the lessee for such time as is specified by the lease arrangement. Payment is not due at once, but at various times during the lease period, usually on a periodic basis. Under appellee's theory, a lessor would, more frequently than not, have to file a Miller Act notice even though the lessee is not in default. If the lease was to run for more than three months, the lessor, in order to protect his rights would have to file a notice after three months, even though the lessee had met every rental payment promptly.

■ We hold the correct solution of the problem is the one advanced by appellant. It contends that the notice period runs from the time the equipment was last available for use on the project. In the instant case, the parties agreed by stipulation that December 5, 1956, was the last day on which any of the leased equipment was at the Travis job site. Thus the one notice which the court found to be adequate from a content standpoint was not timely. This is Plaintiff's Exhibit No. 5, a letter *dated March 8, 1957*, and mailed to the contractor (Campbell) on March 12, 1957.

■ The court found, further, that all the other notices which were mailed within the required time were defective in substance. To test the court's determination on this point, we must inquire into the required contents of a Miller Act notice. Both parties cite Bowden v. United States, supra, 239 F.2d at page 577, to establish the notice requirements. There the court states that the notice must be in writing; must be sent to the prime contractor; and must inform him that the supplier is looking to him for payment. Against these standards, the court tested the three communications sent by appellant within the period specified in the Miller Act. As the trial court pointed out, Exhibits 2 and 3 (letters

dated September 17, 1956, and November 8, 1956) might have been adequate notices under the Funston bond, but they make no reference to the Travis job. They simply fail to make any reference, express or implied, to the oral contract permitting use of the rented equipment on the Travis project. The letter of January 21, 1957 (Exhibit 4) is also inadequate. It specifically mentions the Travis job, but it was sent to the surety on the Funston job. A copy was, it is true, sent to the prime contractor, but it does not inform the prime contractor that appellant is looking to it for payment. Rather the letter addresses the surety and asks it about its intentions regarding payment of the claim.

It is our opinion that the trial court was correct in rejecting all notices on the ground that no one of them complied with the requirements of the Miller Act.

B. Appellant asserts that regardless of the propriety of the trial court's conclusion on the notice issue, the court erred in failing to make findings, as required by Rule 52 (Fed.R.Civ.P., 28 U.S.C.A.), on all disputed issues in the case. The court, in the action against Phoenix, did not make findings as to the time the equipment was available for use at Travis. If the court did err, in failing to make the findings, the error was harmless. Since the court's correct conclusion on the notice issue precludes any recovery by appellant, findings on the "availability" issue would be mere surplusage. Such findings are not needed in order to aid this court in reviewing the decision below, and the absence of such findings is clearly no cause for reversal. If, on the other hand, this court should have determined that the trial court erred on the notice issue, then we would have been required to send the matter back to the trial court for a determination of appellee's liability. But we have held the court did not err on the issue of notice. The trial court's failure to make findings on all disputed issues is therefore a makeweight which cannot affect the outcome of the case.

C. Since we have accepted the trial court's conclusion on the notice issue, we need not consider the next issue, raised by appellee. We, however, deem it advisable to express our views on this matter.

Appellee, as a precaution, argues that the rental agreement was in fact not a lease but a conditional sale contract covering capital equipment which was not totally consumed on the Miller Act jobs. Thus, appellee contends, the Miller Act bonds do not cover appellant's claim. The basis of appellee's contention is fairly and accurately summarized by the trial court in his opinion in the action against Fidelity (No. 17181), since Fidelity also raised the issue in the trial court. And the trial court's answer to the contention, also contained in the opinion, is clear and convincing, and we here adopt it:

"Defendants draw attention to the provisions in the agreement under which Anderson-Kerber was to pay $6116.00 per month commencing with March 20, 1956, until and including October 20, 1956, and to the fact that it provided that if payments were so made, Anderson-Kerber would have the privilege of purchasing the equipment at the exact amount of the payments set forth in the agreement. Notwithstanding the fact that the agreement designates the transaction as a rental it is contended that the agreed payment of the total value of the equipment within seven months compels the conclusion that a sale or conditional sale was involved. * * *

The fact that Anderson-Kerber was given an option to retain the equipment upon payment of the last installment raises some question as to the true meaning of this contract; however, a definitive determination of that issue must take account of all the provisions of the agreement as well as of the intent of the parties to it. * * * The agreement here is entered into for a minimum rental period of one month, expressly pro-

vides for monthly payments over a stipulated period of time and for the retaking of the equipment by the lessor without any compensation to the lessee in the event of default. Moreover, evidence was introduced that the type of agreement here involved is often resorted to by lessors of earth moving equipment and is regarded in the trade as the usual leasing agreement. Expert testimony indicated to the court that the total monthly rental set forth was not unreasonable for rental of the type of equipment involved. In view of the language of the contract and the evidence adduced, this court will treat the contract as what it purports to be i. e. a lease."

The trial court's conclusion upon this issue is thus a determination of fact based in large measure upon the trial court's evaluation of expert testimony. Under these circumstances, the trial court's judgment cannot be described as clearly erroneous. To the contrary, the trial court's evaluation of the situation appeals to us as quite sound.

■■■■ D. One further contention in connection with this issue is raised by appellant. Appellant claims that since appellee did not appeal from the judgment, it cannot now question the trial court's determination that the agreement involved is a lease. This contention is without merit. Generally a non-appealing appellee may raise errors in order to *sustain* the judgment below (see 5 C.J.S. Appeal and Error § 1498, p. 847), although he may not do so in order to obtain a modification of the trial court's judgment (Id. at p. 843). Thus appellee Fidelity could not have raised the point on appeal (and it did not), but it was perfectly proper for Phoenix to do so.

III—Conclusions:

In appeal No. 17181, the only questions are the court's refusal to award pre-judgment interest and the proper method of allocating the pre-May 27, 1956, rental which had been paid by Anderson-Kerber. The court's computations properly allocated the rent paid to the period for which it was paid; its refusal to award pre-judgment interest is legally justified under the facts of the case. We *affirm* the judgment in appeal No. 17181.

In appeal No. 17182, the fundamental issue is the adequacy of the Miller Act notices. None of the notices sent by appellant to the prime contractor constitute a timely, unequivocal demand upon such contractor to pay the rental accruing in connection with items used on the Travis project. The district court, therefore, did not err in refusing to award judgment against the surety. We *affirm* the judgment in appeal No. 17182.