**UNITED STATES for the Use of SGB UNIVERSAL BUILDERS SUPPLY, INC., Plaintiff,**

**v.**

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant.**

**No. 78 C 1603.**

United States District Court, E. D. New York.

Aug. 30, 1979.

Danziger, Markhoff & Feigert, P. C., White Plains, N. Y. (Irwin Pronin, White Plains, N. Y., of counsel), for plaintiff.

Harris Birnbaum, New York City, for defendant.

MEMORANDUM AND ORDER

NICKERSON, District Judge.

The use plaintiff (herein called plaintiff) brought this action under the so-called Miller Act, 40 U.S.C. §§ 270a through 270d, against the surety on a bond for the benefit

of persons supplying labor and materials for construction work at the United States Merchant Marine Academy at King's Point. The case was tried to the court.

On March 11, 1976 Falco Construction Corporation ("Falco") and the United States government entered into a contract for the job. Defendant supplied the bond for "payment to all persons supplying labor and material in the prosecution of the work."

On April 19, 1977 plaintiff made an agreement with Tino Masonry Corp. ("Tino"), a subcontractor of Falco, renting to Tino certain scaffolding and shoring equipment to be used in the work. The lease, on plaintiff's printed form, provided for a specified rental to be paid every four weeks, the rental period to "commence on the date of delivery to the job site" and to "terminate on the date of redelivery" of the equipment to plaintiff. The form also recited that equipment not returned "shall be considered sold to the customer at the list price established" by plaintiff and that should the customer fail to pay the rent promptly plaintiff might retake the equipment and bill the customer for the cost of doing so. A similar rental agreement for further equipment was made on May 24, 1977.

In addition to the scaffolding and shoring materials rented to Tino for use on the government job involved in this case plaintiff leased Tino equipment for use on four other jobs. Evidently in the summer of 1977 Tino found itself in financial difficulty. By August 12, 1977, it owed plaintiff a total of $7,648 on the rentals at all five jobs. On that date it paid plaintiff $1,600 but this amount was not allocated by either Tino or plaintiff to any particular job. Tino never made any further payments to plaintiff. Finally Tino abandoned the subcontract with Falco. The last day Tino did any work on the project was September 23, 1977.

Apparently plaintiff soon became aware of this because it sent no further bills for rental to Tino after that date. Moreover, on November 8, 1977, plaintiff wrote to Falco confirming a telephone conversation of the same day, enclosing a list of plaintiff's equipment on the site, and asking cooperation "in assisting us to pick up our material at the site." However, at that time plaintiff did nothing further to retake its equipment.

On November 16, 1977, plaintiff's attorneys wrote by registered mail to Falco and the Director of Finance of the Merchant Marine Academy stating that plaintiff had a claim against Tino for $11,233.20 for material delivered and for $1,223.70 in unpaid rentals and asking for information as to any surety bond. On December 19, 1977, the attorneys wrote by registered mail to defendant claiming those amounts.

Eventually on March 28, 1978, Falco wrote to plaintiff saying that materials abandoned by Tino were obstructing the progress of the work and that if plaintiff claimed and could prove ownership and would hold Falco harmless as to any claims with regard to the materials, plaintiff should remove them or they would be scrapped. On May 4, 1978 plaintiff removed certain equipment from the site, having executed an indemnification to Falco against any claim to ownership by others.

Plaintiff now claims $1,345.95, the alleged value of the equipment originally delivered to the site but not recovered by plaintiff, and $2,545.62 representing rentals through March 23, 1978.

The relevant statutory provision is 40 U.S.C. § 270b, which provides in pertinent part, that "[e]very person who has furnished labor or material in the prosecution of the work" and has not been "paid in full" before the expiration of ninety days after the day on which "the last of the . . . material was furnished or supplied by him" may sue on the bond, provided that a person having a direct contractual relationship with only a subcontractor must give written notice to the contractor "within ninety days from the date on which such person . . furnished or supplied the last of the material for which such claim is made . . . .."

Plaintiff contends that it continued to "furnish or supply" the equipment until the March 1978 date when Falco asked for their removal and that defendant is responsible for rentals to that date. Plaintiff also asserts that it may recover the value of the materials not returned, relying on the provision of its contract with Tino stating that equipment received on the site but not returned would be deemed sold to Tino at list price.

■ Ever since *Illinois Surety Co. v. John Davis Co.,* 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1917), it has been settled that rentals for equipment furnished for the job and used "in the prosecution of the work" may be recovered under the bond. But neither the Supreme Court nor the Court of Appeals for the Second Circuit appears to have addressed the question of the date on which notice must be given to the contractor in the event of a default in rental payments by a subcontractor. Defendant contends that the statute requires that notice be given within ninety days of the date of the first delivery of the equipment to the site because that and no later date is when the equipment has been "furnished or supplied."

Any such reading would be fatuous. During the period of ninety days after delivery the lessee may well make all rental payments in strict accordance with the lease. Yet the notice required of the claimant must state, among other things, the amount claimed against the subcontractor. Plainly therefore the legislation does not contemplate that the ninety day period will commence on the date a lessor makes delivery. The only sensible interpretation of the notice requirement in the case of rentals is that the equipment continues to be "furnished or supplied" by the lessor for some period after delivery. Every court which appears to have considered the matter has reached the same conclusion. *See, e. g., United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell,* 293 F.2d 816, 820 (9th Cir. 1961) *cert. denied* 368 U.S. 987, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962).

So much is evident. But the precise event which causes the ninety day period to commence is less clear. The statutory language says it shall begin on "the date on which" the claimant "furnished or supplied the last of the material."

■ The purpose of the notice provision is to protect the prime contractor where he has no contractual relationship with the claimant. *United States ex rel. J. A. Edwards & Co. v. Thompson Construction Corp.,* 273 F.2d 873 (2d Cir. 1959), *cert. denied* 362 U.S. 951, 80 S.Ct. 864, 4 L.Ed.2d 869 (1960). There would be some reason in policy to require a lessor to give notice within ninety days of the first default in rental payments, in this case within ninety days of May 17, 1977. The prime contractor is not privy to the relationship between the subcontractor and the lessor, and runs the risk that the lessor will allow the subcontractor to incur a substantial bill. The proof was that it was not infrequent for plaintiff's lessees to be six months in arrears.

But section 270b makes the commencement of the period turn not on the date of the subcontractor's default but on the date when the last of the equipment was "furnished or supplied". It would do violence to the wording of the statute to hold that the equipment had ceased to be "furnished or supplied" merely because rent had not been paid.

However, the lessor can hardly be said to be "furnishing or supplying" the equipment to a subcontractor who has deserted the project and has ceased to use the equipment. The court therefore holds that the notice period commences when, as here, the subcontractor abandons the work and no longer is using or has use for the equipment in the prosecution of the work.

To make the period begin on that date respects the statutory language and is not unfair to the lessor, who will, or should be required to, ascertain the abandonment within ninety days, or to the prime contractor who will know of its subcontractor's disappearance. When the equipment has been abandoned for ninety days the prime

contractor should be allowed safely to assume that the lessor has received whatever moneys are due it from the subcontractor.

In this case the lessee worked on the project until September 23, 1977. Therefore both plaintiff's registered letters, dated November 16, 1977 and December 19, 1977, gave timely notice. Plaintiff is entitled to recover the rental payments up to September 23, 1977, but, for the reasons already stated, not the rentals accruing thereafter.

There is some suggestion in the correspondence that Falco itself used the equipment subsequent to Tino's ceasing work and that plaintiff may recover on the bond for that period of use. But there was no proof of Falco's use, and plaintiff's written notices only claim against Tino. In this action plaintiff may not recover against Falco on a *quantum meruit* theory or otherwise.

Plaintiff is not entitled to the value of the equipment not returned. Falco was not party to plaintiff's contract with Tino and so is not bound by the provision reciting that equipment not returned will be deemed sold to Tino.

The payment of $1,600 by Tino should be allocated to the rental payments claimed here in the same proportion that the rentals on this job on August 12, 1977 bear to the total amount then due on all five jobs. On that date Tino owed plaintiff a total of $7,648, and the rentals due on the contract here amounted to $893.22. Thus, plaintiff's claim for $1,223.70 of unpaid rentals to September 23, 1977 is reduced by $187.20. Plaintiff is entitled to a judgment of $1,036.50 with interest. Each party is to bear its own costs.

The foregoing constitutes the court's findings of fact and conclusions of law.

So ordered.