923 F.2d 146
 36 Cont.Cas.Fed. (CCH) 76,002
 UNITED STATES for the Use of PIPPIN, Norman, dba: Pippin
Grading & Paving, Plaintiff-Appellee,
v.
J.R. YOUNGDALE CONSTRUCTION COMPANY, INC., Defendant,
and
Bishop Sheridan, III, dba: Bishop III Demolition,
Defendant-Appellant.
UNITED STATES for the Use of PIPPIN, Norman, dba: Pippin
Grading & Paving, Plaintiff-Appellee,
v.
J.R. YOUNGDALE CONSTRUCTION COMPANY, INC.; Bishop Sheridan,
III, dba: Bishop III Demolition, Defendants,
and
Lumbermen's Mutual Casualty, Defendant-Appellant.
 Nos. 88-6724, 89-55038.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Dec. 4, 1990.*
Decided Jan. 11, 1991.
 
 Larry E. Robinson, Anderson, McPharlin & Conners, Los Angeles, Cal., for defendants-appellants.
 Marc R. Levine, Corona, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before NORRIS, HALL and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Norman Pippin ("Pippin") brought a single action under the Miller Act, 40 U.S.C. Secs. 270a-d, against J.R. Youngdale Construction Company ("Youngdale"), Lumbermen's Mutual Casualty Company ("Lumbermen"), and Sheridan Bishop ("Bishop"). After a one-day bench trial, the district court determined that Pippin's claim was not barred by the one-year statute of limitations of section 270b(b) of the Miller Act and granted judgment in favor of Pippin and against Lumbermen and Bishop. Both Lumbermen and Bishop appeal the district court's judgment. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS AND PROCEEDINGS
 
 2
 Youngdale was awarded a contract by the Department of the Navy for the construction of maintenance hangar additions. Youngdale, as principal, and Lumbermen, as surety, executed a payment bond which guaranteed payment to all persons supplying labor and material in connection with the performance of the contract. Youngdale subcontracted some of its contract obligations, including excavation and grading, to Bishop. In October 1984, Bishop entered into an oral agreement with Pippin. Pippin agreed to supply earthmoving equipment and personnel to Bishop for Bishop's use in fulfilling the grading portion of his contract with Youngdale.
 
 
 3
 The last day that Bishop physically used the equipment supplied by Pippin was February 8, 1985. On that date, Bishop left the project site and told Youngdale that he would not continue his performance unless Youngdale gave him a written change order. Bishop informed Pippin that he was leaving the project site and would not return until he received the written change order.
 
 
 4
 Bishop continued to negotiate with Youngdale for a written change order until February 18, 1985. Until that date, Bishop intended to return to the project site upon receiving a change order, and Youngdale remained hopeful that Bishop would return and complete his obligations. Pippin's equipment remained on the project site at least until February 18, 1985.
 
 
 5
 On February 18, 1985, Youngdale terminated its contract with Bishop and mailed Bishop notice that he was replaced as of that date. On May 10, 1985, Pippin notified Youngdale of Pippin's claim for work performed under his contract with Bishop.
 
 
 6
 Pippin, Youngdale, and Lumbermen subsequently entered into a "freeze agreement" on February 12, 1986. In this agreement, the parties waived all defenses based on the statute of limitations except for those claims that were barred as of February 12, 1986. Pippin then brought this action under the Miller Act against Youngdale, Lumbermen, and Bishop. Prior to trial, the district court dismissed the claim against Youngdale with prejudice. On November 4, 1988, the district court found in favor of Pippin and entered judgment against Lumbermen and Bishop.
 
 
 7
 Lumbermen filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e) on November 14, 1988. While Lumbermen's Rule 59(e) motion was pending, Bishop filed a notice of appeal on December 2, 1988. The district court subsequently denied Lumbermen's Rule 59(e) motion on December 19, 1988. Lumbermen then filed a timely notice of appeal on December 27, 1988. Bishop, however, failed to file a notice of appeal after the district court denied Lumbermen's Rule 59(e) motion.
 
 DISCUSSION
 A. Jurisdiction over Bishop's Appeal
 
 8
 "The requirement of a timely notice of appeal is mandatory and jurisdictional." Munden v. Ultra-Alaska Assocs., 849 F.2d 383, 386 (9th Cir.1988) (citing Browder v. Director, Dep't of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 560-61, 54 L.Ed.2d 521 (1978)). Federal Rule of Appellate Procedure 4(a)(4) states that a notice of appeal filed before the disposition of a timely Rule 59(e) motion "shall have no effect."[1] Fed.R.App.P. 4(a)(4); see also Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403-04, 74 L.Ed.2d 225 (1982) (per curiam) (notice of appeal filed while Rule 59(e) motion is pending is "a nullity").
 
 
 9
 If any party to the action files a Rule 59(e) motion, the time to file a notice of appeal is tolled for all parties. See Marrical v. Detroit News, Inc., 805 F.2d 169, 171 (6th Cir.1986) (filing Rule 59 motion tolls time for all defendants joined in single action); F.E.L. Publications, Ltd. v. Catholic Bishop, 739 F.2d 284, 284 (7th Cir.1984) (per curiam) (holding notice of appeal filed before the disposition of a Rule 59(e) motion has no effect even if the motion concerns issues unrelated to the issues appealed). A party who files a notice of appeal while a Rule 59(e) motion is pending must file another notice of appeal after the disposition of the motion. If the party fails to do so, the court of appeals lacks jurisdiction over that party's appeal. Lewis v. United States Postal Serv., 840 F.2d 712, 714 (9th Cir.1988) (per curiam).
 
 
 10
 Because Bishop failed to file a notice of appeal after the district court denied Lumbermen's Rule 59(e) motion, we lack jurisdiction over Bishop's appeal. Lumbermen, however, did file a notice of appeal after the disposition of its Rule 59(e) motion. Therefore, while we do not have jurisdiction over Bishop's appeal, we do have jurisdiction over Lumbermen's appeal.
 
 B. Commencement of Statute of Limitations
 
 11
 Pippin brought this action against Lumbermen to recover on a payment bond executed by Youngdale and Lumbermen pursuant to section 270a of the Miller Act.[2] To recover on this bond, Pippin's complaint must have been filed within one year from "the day on which the last of the labor was performed or material was supplied" by Pippin to Bishop. 40 U.S.C. Sec. 270b(b) (1988). Lumbermen challenges the district court's finding that the one-year statute of limitations did not begin to run until February 18, 1985, the date that Youngdale terminated its contract with Bishop. Lumbermen contends that the limitations period began on February 8, 1985, the last date that Bishop performed work on the project and thus the last date Bishop could have physically used Pippin's equipment on the project site. If the period began on February 8th, Pippin's claim was barred prior to the February 12, 1986 "freeze date."
 
 
 12
 In deciding when the one-year limitations period of section 270b(b) begins to run we consider principles developed in cases which have considered when the 90-day notice period of section 270b(a) commences. We do so because the language in the notice provision is substantially similar to the language relating to the limitations period.[3] Under the notice provision of the Miller Act, a claimant who provides labor or materials to a subcontractor but who is not in privity with the prime contractor must give notice to the prime contractor[4] of any claims within ninety days from the date the claimant "furnished or supplied the last of the material for which such claim is made." 40 U.S.C. Sec. 270b(a) (1988).
 
 
 13
 In United States ex rel. Carter-Schneider-Nelson, Inc. v. Campbell, 293 F.2d 816 (9th Cir.1961), cert. denied, 368 U.S. 987, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962), we held that when the claimant provides equipment by lease or rental, the notice period begins on the date "the equipment was last available for use on the project." Id. at 820; see also United States ex rel. Miller & Bentley Equip. Co. v. Kelley, 327 F.2d 590, 591 (9th Cir.1964). We rejected the surety's argument that the notice period began when the lessor/claimant delivered the equipment. Campbell, 293 F.2d at 820. When a claimant furnishes material, delivery completes the claimant's obligations and the notice period begins on the date of delivery. Id. When a claimant provides equipment under lease or rental, however, the claimant must "allow the equipment to remain in the hands of the lessee for such time as is specified by the lease arrangement." Id. Thus, the lessor continues to supply the equipment until the date that the equipment is no longer available for use by the subcontractor on the project.
 
 
 14
 We must determine the date that Pippin's equipment was last available for Bishop's use on the project. Was it the date Bishop last performed work on the project or the date Youngdale terminated its contract with Bishop? We conclude that Pippin's equipment remained available for Bishop's use until Youngdale terminated its contract with Bishop. See Frank Briscoe Co. v. United States ex rel. Western States Mach. Co., 396 F.2d 847, 848-49 (10th Cir.1968) (holding equipment last available for use when subcontractor's contract with prime contractor terminated rather than subsequent date when equipment removed from site); Kelley, 327 F.2d at 591 (holding equipment last available for use when subcontractor's contract with prime contractor terminated rather than on date claimant should have learned of termination); United States ex rel. SGB Universal Builders Supply, Inc. v. Fidelity and Deposit Co., 475 F.Supp. 672, 674 (E.D.N.Y.1979) (holding notice period commences on date subcontractor abandons project and "no longer is using or has use for the equipment" on the project).
 
 
 15
 When equipment is leased or rented to a subcontractor, the subcontractor pays for the use of the equipment. Thus, the equipment is "supplied" by the lessor for the period that the equipment is on the project site and available for use by the subcontractor to fulfill its obligations under its contract with the prime contractor. The equipment is no longer available for the subcontractor's use on the particular project when the subcontractor's relationship with the project is ended by the subcontractor abandoning the project or by the prime contractor terminating its contract with the subcontractor.
 
 
 16
 In the present case, the subcontractor Bishop suspended its work but did not abandon or desert the project.[5] During this suspension, Bishop engaged in negotiations to secure a written change order, and Pippin's equipment remained on the site pursuant to Pippin's contract with Bishop. Thus, the equipment remained available for Bishop's use to fulfill Bishop's obligations to Youngdale. We conclude, therefore, that Pippin continued to supply his equipment for Bishop's use during the suspension and until February 18th when Youngdale terminated its contract with Bishop. Accordingly, the statute of limitations did not begin to run until February 18, 1985.
 
 
 17
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 The pertinent text of Rule 4(a)(4) provides:
 If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: ... (iii) under Rule 59 to alter or amend the judgment ... the time for appeal for all parties shall run from the entry of the order ... denying [the] motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion....
 Fed.R.App.P. 4(a)(4) (emphasis added).
 
 
 [2]
 Section 270a requires the furnishing of a payment bond for "any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States." 40 U.S.C. Sec. 270a(a) (1988)
 
 
 [3]
 We have previously applied the case law relating to this notice provision in interpreting an Idaho statute of limitations "analogous" to the Miller Act limitations period. Interform Co. v. Mitchell, 575 F.2d 1270, 1280 (9th Cir.1978) (limitations period begins on date equipment last "available for use" on project)
 
 
 [4]
 In this opinion, "prime contractor" refers to the party in privity with the United States and the principal on the payment bond
 
 
 [5]
 This case is distinguishable from United States ex rel. John D. Ahern Co. v. J.F. White Contracting Co., 649 F.2d 29 (1st Cir.1981). In Ahern, the plaintiff suspended its work, and the First Circuit held that the date of suspension commenced the notice period. The plaintiff in Ahern supplied only labor and material and did not rent or lease equipment to the subcontractor. Thus, the last date that plaintiff supplied labor was clearly the date plaintiff suspended its work