ANÍBAL L. ARSUAGA, INC., Plaintiff and Appellant, *v.* LA HOOD CONSTRUCTORS, INC., ET AL., Defendants and Appellees.

No. R-62-307.    Decided February 20, 1964.

*Rodríguez Ema & Rodríguez Ramón, Rodolfo Sequeira,* and *Nicolás Jiménez* for appellant. *Rivera Zayas, Rivera Cestero & Rúa* for appellees.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Northwestern Construction, Inc., contracted for the construction of certain work with George La Hood, doing business as La Hood Mechanical Contractors. La Hood Mechanical Contractors, as principal, and Maryland Casualty Company, as surety, posted a bond in favor of Northwestern Construction, Inc. Insofar as pertinent to this action, the bond provides the following:

"KNOW ALL MEN BY THESE PRESENTS, that we LA HOOD MECHANICAL CONTRACTORS, P.O. Box 805, Bayamón, Puerto Rico .................... as PRINCIPAL, and MARYLAND CASUALTY COMPANY, a corporation organized and existing under the laws of the State of Maryland, with principal office at Baltimore, Maryland, and Agency at No. 252 Tetuán Street of San Juan, Puerto Rico ..................................... as SURETY are are held and firmly bound unto the Northwestern Construction, Inc., hereinafter called the 'Owner,' in the penal sum of FOUR HUNDRED FIFTY FIVE THOUSAND NINE HUNDRED NINETY ONE & NO/100 (*$458,991.00*) [*sic*] dollars for the payment of which sum well and truly to be made, *we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally, firmly by these presents.*

". . . . . . . .

"AND, *if the Principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract, and any and all duly authorized modifications of said contract that may hereafter be made, notice of which modifications to the surety being hereby waived, then this obligation to be void; otherwise, to remain in full force and virtue.*" (Italics ours.)

After the work was commenced the contractor transferred the entire assets of "La Hood Mechanical Contractors" to a corporation named "La Hood Constructors, Inc.," in which he was acknowledged a participation equivalent to two-fifths of the capital stock. La Hood was elected Executive Vice President of the new corporation and he continued in charge of the work object of the surety contract.

Aníbal L. Arsuaga, Inc., an entity engaged in the sale of building materials, sold to the corporation materials worth $1,172.25. They were used in the work of Northwestern Construction. The corporation did not pay the amount owed to the materialmen. The latter demanded payment from the surety and upon its refusal to pay the debt it filed an action for collection thereof against the corporation and the surety.

The surety company set up two defenses. (1) The bond did not cover the laborers and the materialmen because it was issued in favor of the owner of the work. It invoked our rulings in *Municipality of Fajardo et al.* v. *Axtmayer et al.*, 31 P.R.R. 780 (1923); *Morales* v. *Chabert*, 43 P.R.R. 114 (1932); and *Batlle* v. *Pereyó*, 67 P.R.R. 621 (1947). (2) The bond was issued to secure a natural person and the claim was against a distinct corporate entity.

Although the trial court dismissed the second defense, it held that defendant was not liable "since there was no privity between plaintiff and the surety company."

Periodically during the past 40 years we have had for our consideration the main question raised by the surety company: the scope of its liability as to the laborers and materialmen in bonds like the one drawn up in the present case. The last occasion was in *Cristy & Sánchez* v. *Commonwealth*, 84 P.R.R. 226 (1961), where we considered the liability of a surety company which secured the contractor of certain public work as respects the laborers and materialmen. We held that the bond covered them and that, as respects public works, the cases of *Municipality of Fajardo et al.* v. *Axtmayer et al.*; *Morales* v. *Chabert*, and *Batlle* v. *Pereyó*, were expressly overruled.

In *Cristy* we said that "our previous authorities held that, considering the bond instrument isolatedly, there was no privity between the sureties and the materialmen and labor contractors—*Municipality of Fajardo et al.* v. *Axtmayer et al.*—in the absence of adequate recitals in the bond instru-

ment to the effect that the latter was executed also in favor of the materialmen and labor contractors." Is that really so?

In the first place we must recognize that the Civil Code, second paragraph of § 1209[1]—31 L.P.R.A. § 3374—provides that contracts may contain stipulations in favor of a third person, and that the latter may demand their fulfillment provided he has given notice of his acceptance to the person bound before the stipulation may have been revoked. Thus, our juridical system sanctions that two parties to a contract may include therein provisions in favor of third persons.

■ The modern trend of the case law and the doctrine in civil-law jurisdictions is to sanction stipulations in favor of a third person. De Buen, in an article entitled *La Estipulación en Provecho de Tercero*, 142 *Revista General de Legislación y Jurisprudencia (Doctrinal)* 193, 207 (1923), says:

"The foregoing citations are sufficient to show that there is a marked trend in modern law to recognize the possibility that a contract may produce effect respecting a third person who has not been a party thereto. Where the codes do not expressly recognize it, the decisions and the doctrine interpret them in a manner most adequately to reach such result."

And Puig Brutau, referring to the second paragraph of § 1257 of the Spanish Civil Code, identical with our § 1209, asserts in II-1 *Fundamento de Derecho Civil* 270 (1954 ed.), the following:

"This provision recognizes the efficacy of a contract in favor of a third person with a scope which, indeed, only the modern decisions of the Supreme Court have properly recognized. The provision by itself, that is, as express words of the lawmaker, did not fail to give occasion for much doubt, and during a long time it was the object of incomprehension, in whole or in part,

---

[1] The second paragraph provides as follows:

"Should the contract contain any stipulation in favor of a third person, he may demand its fulfillment, provided he has given notice of his acceptance to the person bound before it may have been revoked."

as a result of an old prejudice: that he had not been a party to the contract. *The history of the excellence of such belief constitutes a chapter of extraordinary interest because it shows how the juridical progress gradually takes place as a result of the new needs in the struggle against the inertia of the traditional ideas."* (Italics ours.)

See, also, 169 *Revista General de Legislación y Jurisprudencia (Doctrinal)* 249, 1941 ed., commenting the Judgment of December 9, 1940 of the Supreme Court of Spain (1941 ed.) ; 8-II Manresa, *Código Civil Español* 313, 318 *et seq.* (5th ed. 1950) ; 3 Castán, *Derecho Civil Español, Común y Foral* 428 *et seq.* (8th ed. 1954) ; 2-I Ruggiero, *Instituciones de Derecho Civil* 306; and the elaborate study by Casals Colldecarrera, *Contrato a Favor de Tercero*, V *Nueva Enciclopedia Jurídica* 345 (Seix, 1953 ed.).

We must also recognize that the third beneficiaries may be indeterminate persons. *Serrano* v. *P.R. & Am. Ins. Co.*, 40 P.R.R. 687 (1930) ; Judgment of the Supreme Court of Spain of December 10, 1956 (Aranzadi, No. 4126, 1956) ; De Buen, *op. cit.* at 230; Puig Brutau, *op. cit.* at 278; I Velázquez, *Obligaciones y Contratos* 97 (1962 ed.). In *Cristy* we ratified this principle in recognizing the right of laborers and materialmen to claim from the surety in cases involving public work contracts.

■ The section provides that the stipulation in favor of a third person is subject to his acceptance, and Scaevola maintains that "the acceptance may be express or implied, by word of mouth or by acts, insofar as one and the other reflect the will of the third person to assume a juridical nexus. Bearing in mind, further, that 'where the law does not distinguish, the implied and the express are equal.' (Judgment of October 8, 1853.) No matter how the third person manifests his adhesion to the covenant as respects him, he is bound." 20 Scaevola, *Código Civil* 630 (1958 ed.).

In his article entitled *Notas Sobre los Contratos a Favor dé Tercero*, 5 *Anales de la Academia Matritense del Notariado* 449, 487 (1950), Ignacio Nart says:

"The third person [dominus negotii] may ratify by accepting the stipulation made in his favor. His ratification shall not be necessary if he avails himself objectively of the advantages which it has afforded him."

And in II-I Josserand, *Derecho Civil, Teoría General de las Obligaciones* 225 (1950 ed.), it is said:

"The declaration of the third person may be made in any manner whatever; some times it is implied, it may be deduced by mere presumption."

The modern trend is to reduce the scope of the acceptance by the third person. 3 Espín Canovas, *Derecho Civil Español* 373 (1954 ed.). He points out that the Italian Civil Code of 1942 provides in § 1411 that "a stipulation in favor of a third person is valid. Except as otherwise agreed upon, the third person acquires the right against the promisor as a consequence of the stipulation. However, the stipulator may revoke or modify the same provided the third person has not signified, also as against the promisor, his desire to avail himself of it."

■ In *Kauffman v. National Bank*, 42 Phil. Rep. 182, 189 (1921), the Supreme Court of the Philippine Islands said in connection with a stipulation in favor of a third person that the latter "clearly signified his acceptance to the bank by demanding payment." And this Court 45 years ago, although without deciding the question, said that the filing of the complaint could perhaps be considered as an acceptance. *Gelabert et al. v. Sánchez*, 26 P.R.R. 592, 596 (1918).

It should also be stated, as was done in *Cristy* at p. 234, that "the strict construction [of the bond] was controlling at a time when the personal bondsmen, by a mere act of

liberality, secured the public-works contract, but it lost its popularity with the advent of surety companies making a business of acting as surety for compensation." See, also, *Guaranty Co.* v. *Pressed Brick Co.,* 191 U.S. 416, 426 (1903).

Does a privity exist or not between the surety Maryland Casualty and the corporation which furnished the materials to the contractor? The bond provides that the obligation assumed by the surety would cease if the principal pays promptly to all persons supplying labor or materials in the prosecution of the work.

It is accepted in civil-law jurisdictions that stipulations may be made in favor of laborers and suppliers of materials in work contracts, demandable by the latter directly. Josserand in his work *supra* at 199 mentions, as example of contracts containing a stipulation for the benefit of a third person, "public works contracts or of materials: mechanic's liens frequently contain clauses imposing on the contractor certain obligations in the interest of the laborers who execute the work."

In his work *Derecho Civil, Teoría General de las Obligaciones,* vol. I, p. 187, Marty asserts that the decisions "sanction . . . stipulations for the benefit of laborers in the mechanic's liens in the awards of public works, that is, for the benefit of the members of a group which will be formed later and the formation of which shall be changeable."

Puig Brutau, *op. cit.* at 274, citing Josserand, mentions this class of stipulation in favor of laborers in his examples of contracts for the benefit of third persons. See, also, XI Planiol, *Tratado Práctico de Derecho Civil Francés* 218, § 967 entitled *"Extensión Convencional de la Acción Directa"*; De Buen, *op. cit.* at 228.

Commenting covenants in favor of a third person in insurance contracts in general and his right to bring a direct action, Professor Demogue, of the University of Paris, in an article entitled *Acción Directa que la Víctima de un Daño*

*Puede Ejercitar Contra el Asegurador que Tomó a su Cargo Dicho Riesgo en Virtud de Contrato con Otra Persona,* 13 *Revista de Derecho Privado* 313 (1926), says:

"To conceive a contract as a privity which is established between two persons and lives completely apart from its surroundings, is a mere abstraction of the spirit without any connection with the practical needs. Hence, it is perfectly admissible for a third person to have direct action against one of the contracting parties to demand, whenever warranted by special circumstances, the fulfillment of the obligation assumed. The reasons lie in the fact that the prejudiced third person contributes to produce in the insured's patrimony the right to indemnity, since this right, which was merely conditional theretofore, becomes actual when the victim suffers damage to his person or property."

In the comments on the second paragraph of § 1257 of the Spanish Civil Code, counterpart of our § 1209, it is said in 169 *Revista General de Legislación y Jurisprudencia (Doctrinal)* 253: "The right stems from the meeting of the minds between the stipulator and the promisor; the beneficiary may accept it or not, and if he does he makes it irrevocable and demandable as against the promisor." And in the Judgment of December 10, 1956 of the Supreme Court of Spain it is held that "it is not necessary to individualize the third person at the time of executing the contract, it being enough to indicate him, that is, that the contractual clause contain sufficient elements in order to be able to identify him thereafter in any manner whatever."

■ In common-law jurisdictions it is generally recognized that provisions such as the one under consideration establish a contractual relation between the bondsmen and the materialmen. The rule accepted by a majority of the American states is stated in Stearns, The Law of Suretyship (Elder, 5th ed. 1951) at p. 267:

"The modern trend is toward a liberal construction of building bonds. The great weight of authority today is that materialmen, laborers or subcontractors, to whom the original contractor is directly liable, can recover on the bond of the latter, *whether the bond be private or public, and, if public, whether voluntary or statutory, if there is some indication of intention either in the bond or relevant statute to benefit such materialmen, laborers or subcontractors.*" (Italics ours.)

■ In Restatement, Security, § 165 (1941), the rule is stated as follows:

"Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons."

In commenting on the foregoing rule, it is said:

"The rule stated in this Section applies both to governmental and private contracts. The rule refers only to cases where there is a promise for the benefit of third party beneficiaries, and is not concerned with the reason for the inclusion of such a promise."

And in explaining its rationale, it is said:

"The rule stated in this Section, which is stated in terms of right, represents an evolution from rules of interpretation intended to ascertain the purpose of the surety in making certain promises to a governmental or private owner of land or other subject matter of a construction enterprise. In every construction case it must be determined if in fact the surety has made a promise for the benefit of laborers and materialmen. Where no such promise has been made, the surety has no liability to laborers and materialmen. If the surety has in terms guaranteed the payment by the contractor of laborers and materialmen, the result is a liability on the surety determined by the rules stated in Chapter 6 of the Restatement of Contracts. Where the words used by the surety are subject to different possible interpreta-

tions, it is necessary to ascertain the purpose of the surety. *The position taken in this Section, is that the promise of the surety always should be interpreted as for the benefit of the laborers and materialmen where he has guaranteed the promise of the contractor to the governmental or private owner that he will pay laborers and materialmen, and that therefore the rule may be stated in terms of the right of the laborers and materialmen."* (Italics ours.)

■ Corbin, in a well-documented article, *Third Parties as Beneficiaries of Contractors' Surety Bonds*, 38 Yale L.J. 1 (1928), comments on the question under consideration as follows:

"The words used in building contracts and in accompanying surety bonds are now usually such that they are, and should be interpreted as a promise by the surety to pay laborers and materialmen in case of default by the contractor. Often the construction contract contains an express promise by the contractor; and the bond is either conditioned expressly on such payment or on full performance by the contractor of all his promises. The third parties are often definitely indicated in that part of the bond specifying the conditions. Words of 'condition' are not words of 'promise' in form; but in this class of cases it is sound policy to interpret the words liberally in favor of the third parties. In a majority of states, it is already done; and without question the surety's rate of compensation for carrying the risk is sufficiently adjusted to the law. The compensated surety has become an institution that is well suited to carry the risk of the principal contractor's default, whereas individual laborers and materialmen are frequently very ill-prepared to carry the risk. The legislatures have recognized this fact, and in the case of public contracts have required surety bonds to protect the third parties. While this has not been done in the case of private construction, and while the courts should not on their own motion put such a provision into a private surety bond, they may well interpret a bond that is expressly conditioned on the payment of laborers and materialmen as being a promise to pay them and made for their benefit. The words reasonably permit it, and social policy approves it."

Thus, it is accepted that the language used in a bond when reasonably interpreted establishes an obligation in favor of materialmen and a statute need not require the posting of bond. *Johnson Electric Co.* v. *Columbia Casualty Co.*, 133 So. 850 (Fla. 1931); *Byram Lumber & Supply Co.* v. *Page*, 146 Atl. 293 (Conn. 1929); *Hartford Acc. & Indemnity Co.* v. *W. & J. Knox Net & Twine Co.*, 132 Atl. 261 (Md. 1926); *Pittsburgh Plate Glass Co.* v. *Fidelity & Deposit Co.*, 138 S.E. 143 (N.C. 1927); Annotations, 77 A.L.R. 21 (1932), and 118 A.L.R. 57 (1939).

■ If we consider the state of the law in Puerto Rico, the purpose of the bond given could be none other. The bond, apart from the clause under consideration, embodies all guarantee necessary for the owner of the work. Furthermore, in our jurisdiction by law there is no materialmen lien,[2] and the Civil Code protects the owner of the work in providing in § 1049—31 L.P.R.A. § 4130—that: "Those who furnish their labor and materials in a work agreed upon for a lump sum by a contractor have no action against the owner, except for the amount the latter may owe the former when the action is brought."[3] If this is the situation at law as to the liability of the owner of the work, the clause must have some purpose. It is well to cite here from *American Surety Co. of New York* v. *Smith*, 130 So. 440 (Fla. 1930), at p. 443:

---

[2] Act No. 388 of May 9, 1951—22 L.P.R.A. § 47 *et seq.*—requires every contractor of public works to post a bond in behalf of the laborers and materialmen, and authorizes them to bring direct action against the bondsmen for recovery of their claims. It exempts the laborers and materialmen from the requirement contained in the second paragraph of § 1209 of the Civil Code whereby the third person must give notice of his acceptance of the bond.

[3] Act No. 379 of May 15, 1948—29 L.P.R.A. § 279 (Supp. 1963)—provides that "the owner, or the person for whom the works are constructed or the work is done, shall be liable jointly with the contractor, subcontractor, *ajustador*, foreman, agent or representative of the employer, for the payment of the wages earned in regular hours and extra hours of work." See Act No. 111 of June 22, 1961—29 L.P.R.A. § 195 *et seq.* (Supp. 1963).

"The obligation is enlarged, however, by the addition of a further condition, unnecessary to the owner's protection, as follows: '. . . And promptly make payments to all persons supplying labor and material in the prosecution of the work provided for in the contract . . . .' There must have been some purpose in using the latter language. Since the owner was already fully protected, it must be taken as indicating primarily and directly an intent to protect materialmen in the situation of these plaintiffs."

■ In the article *Third Parties as Beneficiaries of Contractors' Surety Bonds, supra,* in discussing the question under consideration Corbin maintains that the purpose of these bonds is generally to protect the owners of works against the liens imposed by law in favor of laborers and materialmen, but that even in those jurisdictions where there is no lien—as in our jurisdiction—the owner may have other motives to require the furnishing of a bond. To this effect he says at p. 16:

"If the case is such that no lien is possible and the promisee knows it, he will not be so motivated and the payment made to the third parties will not be economically beneficial to the promisee. In such a case what motivated the promisee in buying a promise to pay the third persons? Not a desire for his own protection, it has been said, since he is under no duty or liability and the principal contractor's failure to pay the third persons will do him no direct harm. It is not unreasonable to draw the inference, as some courts have done, that his motive was a desire to give added security to the third persons. But even when the promisee has no duty to the third persons and his property is under no liability to a lien, it is very generally recognized that he has something to gain from giving security to laborers and materialmen upon whom the cost and quality of the construction work largely depend. If they are held to have a right on the bond, it brings them added security; such added security for them is economically beneficial to the promisee as well, in that the shifting of the risk of non-payment from the laborers and materialmen to the surety will tend to the standardization of prices and wages and also of the quality of labor and

materials. In all cases, therefore, whether public or private, the motive of the promisee may have been his own economic gain.

"But after all, what difference does it make what were the promisee's complex and uncertain purposes or motives? Often he does not know them himself. It should be enough that the contract contains a valid promise that the third persons shall be paid. If there is doubt that such a promise was in fact made, it may be of some assistance to probe into the heart and the history of the promisee. It may help occasionally in identifying the third persons and in interpreting the words of the contract. In most cases there is little difficulty in identifying the third persons to be paid or in determining whether or not the surety promised to pay them. But the third party's right is not dependent upon the promisee's motives. The question is, was payment to him the factual result agreed upon; was it the promised performance? If it was, judgment in favor of the third party is a proper method of reaching that result. The purposes of the promisee, whatever they were, will be attained with sufficient certainty. The expectations of the third party will not be disappointed."

We should also bear in mind that the contractor, which is the principal in the bond, has a direct interest in giving security to his laborers and materialmen that they will be paid their accounts. His business is the construction of works and, evidently, it is to his advantage that his laborers and materialmen be secured and thus prevent mishaps in future works. III Salvat, *Tratado de Derecho Civil Argentino* 237 (1957 ed.).

As already stated, when for the first time 40 years ago in *Axtmayer* we considered the question under consideration, our understanding that the language of the bond did not establish that it was also executed in favor of the materialmen was controlling in the final determination. In considering anew the question in *Batlle*, we ratified this criterion and stated as reason therefor that the cases cited in support of reversal "have been decided construing statutes which

expressly give to the laborers and the materialmen a clear right to sue the sureties of the contractor, after having complied with certain requisites which are specified in the statutes themselves, or applying the so-called 'American doctrine' regarding contracts which contain stipulations in favor of third persons (*pour autrui*)." ·

We also adduced as reason that in our law " 'security is not presumed; it must be express and cannot be extended further than that specified therein.' Section 1726 of the Civil Code. Therefore, it should be strictly construed."

■ As to the reason stated in *Axtmayer*, we have seen that the language of the bond posted in the present case, reasonably construed, is considered as establishing a right in favor of the materialmen. We have shown that it has been so considered in common-law and in civil-law jurisdictions. The article already cited by Professor Demogue, who advocates that direct action by the third beneficiary be permitted, ends with these words: "If the solutions proposed are successful, it will have been shown once more that abstract interpretations are never but provisional scaffolds and that it is necessary to take them apart whenever sufficient private motives so impose."

As to what was said in *Batlle* that the cases cited to request that we change the interpretation we had given the bond came from jurisdictions which had a statute granting rights to the suppliers to bring direct action against the sureties, we have also shown that even in those jurisdictions where there are no such statutes it is held that direct action by third beneficiaries will lie. Moreover, Planiol maintains in *op. cit. supra*, vol. XI, p. 218, that clauses such as those under consideration exist precisely for the purpose of permitting action by all those persons to whom the law denies the benefit of direct action.

■ In our first opinion in *Axtmayer* we cited *Uy Tam and Uy Yet* v. *Leonard*, 30 Phil. Rep. 471 (1915), in support

of our ruling that the third beneficiary had no direct action. *Uy Tam* discusses the question at length, but if we examine closely the basis of its reasoning we find that at present it does not have the validity which it had when the decision was announced almost half a century ago. The opinion of the Philippine court takes up the question of stipulations in favor of third persons since Roman times until modern times. It points out that those stipulations were prohibited in ancient law, but that the second paragraph of § 1257, counterpart of our § 1209, does permit stipulations in favor of a third person. Yet, the court was of the opinion that "a mere incidental interest of a third person" is not within the doctrine of that section. However, the right of the materialmen is not truly incidental. It is direct. In the aforementioned judgment of December 10, 1956, the Supreme Court of Spain said:

"Where a contract which, having been validly executed between two persons, is intended, nonetheless, to attribute a right to a third person who has not intervened at all, either directly or indirectly, in its execution, notwithstanding which he actually succeeds in attributing it to himself, without the same being considered a right of the party to the contract, and such right was afterwards assigned to the third person or was merely exercised by the latter instead of by the former, such contract is in a strict or technical sense a contract for the benefit of a third person."

■ Regarding the question that the bond should be express, we have already said that its language is explicit enough to create an obligation for the benefit of the materialmen. And in *Cristy* we abandoned that concept of restrictive interpretation of bonds.

In view of the foregoing, the cases of *Municipality of Fajardo* v. *Axtmayer*; *Morales* v. *Chabert*; *Batlle* v. *Pereyó*, and *Commonwealth* v. *United States Fidelity & Guaranty Company*, civil case No. 10,845, Judgment of December 21,

1953, are expressly overruled insofar as they are contrary to the holding herein.

■ We turn to the other question raised by the insurer to the effect that the bond was issued to secure a natural person, George La Hood, doing business as La Hood Mechanical Contractors, and that the materials were sold to a corporation.

The bond was furnished in April 1958. The corporation of which La Hood is Executive Vice President was organized four months later, in August of that year. During the months from March to August 1959 plaintiff supplied materials which were used in the construction of the work. Plaintiff maintains that the surety company is liable for the debts of the corporation in its capacity as successor of La Hood Mechanical Contractors. Its contention is based on the clause of the bond contract copied hereinabove which reads "that the contractor, as principal, and Maryland Casualty Co., as surety, *bind ourselves, our heirs, executors, administrators, and successors, jointly and severally, firmly by these presents.*" (Italics ours.)

Is plaintiff's contention correct to the effect that the corporation La Hood Constructors, Inc., is the successor of La Hood Mechanical Contractors? Does the clause copied create an obligation on the part of the surety to pay for the materials supplied to the corporation for the construction of the work which it secured?

The Supreme Court of the United States had under consideration a similar case, *Illinois Surety Co.* v. *John Davis Co.*, 244 U.S. 376 (1917). It involved the construction of certain federal public work. The principal in that case, as here, was a natural person. In the course of the work he transferred all his assets to a corporation and, as in the present case, it took over the construction. The corporation did not pay the materialmen nor the laborers. The latter brought action against the surety company which set up the

same defense as Maryland Casualty Company herein. The Court, speaking through Mr. Justice Brandeis, concluded that the new corporation was the successor of the natural person who originally was principal to the bond contract. As in this case, the bond provided that it bound the parties thereto and their heirs, executors, administrators, and successors.

In passing upon the question, the Court stated as follows:

"It is urged that the bond referring to Schott [the contractor] provides protection only to those 'supplying him or them labor and materials.' But the claims in question were in a very practical sense furnished *him*—as well as the Engineering Company. He remained liable on the contract; and no one else was known to the United States. Furthermore, if attention is to be directed to the precise wording of the bond, it should be noted that it refers to Schott 'his or their heirs, successors, executors or administrators'; and the Engineering Company may properly be deemed a successor. The argument that the surety's risk ought not to be increased by holding it liable for the default of strangers to the original contract is of no greater force in the case of an assignee than it is in that of the subcontractor. The surety company could protect itself by insisting that the contractor require a bond from all subcontractors and assignees. The surety company was in nowise prejudiced by the transfer of the business, since the management remained unchanged; and no reason is shown for applying the rule of *strictissimi juris.*"

The fact that the bond furnished in *John Davis* by the contractor was required by law, is not a controlling factor. The case of *John Davis* was applied in *James Miles & Son Co. v. Aetna Casualty & Surety Co.*, 1 F.Supp. 925 (D.C.D. Mass. 1932), and it was held that the doctrine was equally applicable even in cases of voluntary bonds owing precisely to the wording of the contract. Planiol, *op. cit.* at 218. It was expressly agreed that the surety company was liable for the debts of the principal and its successors.

■ Notwithstanding the provisions of the first paragraph of § 1209 of the Civil Code to the effect that "contracts shall only be valid between the parties who execute them," there is nothing in the law preventing the parties from agreeing that the obligations contracted be assumed in the name of those who intervene and their successors. *Cf.* 2 Santamaría, *Comentarios al Código Civil* 259 (1958 ed.). In *John Davis* it was held that the organized corporation was a "successor" of the natural person who appeared as principal on the bond. The question for decision in each case is whether the new entity is actually the "successor" of the one which originally intervened in the contract. In view of the specific facts of this case in which La Hood Mechanical Contractors transferred all its assets to a new corporation, that La Hood as Executive Vice President remained in charge of the construction of the work and also had a substantial participation in the capital stock, it is clear that La Hood Constructors, Inc., is the successor of the original firm.

■ The mere fact that the contractor organizes a corporation and assigns the contract to it cannot operate as a discharge of the surety. Indeed, it that could be done, the laborers and materialmen would not be duly secured. That is why the bond contract contains a clause whereby the surety not only secures the contractor applying for the bond but also his heirs, executors, administrators and successors. Realizing the extent of the obligation assumed, the surety is in a position to demand of the contractor sufficient collateral before issuing the bond. It is common practice in the insurance industry to require the execution of an indemnity agreement in order to minimize the risks in these eventualities. *Cf. Abbott* v. *Morrissette,* 48 N.W. 416 (Minn. 1891) ; *United States Fidelity & Guaranty Co.* v. *Burton Lumber Co.,* 221 S.W. 699 (Texas 1920) ; *Board of Education* v. *United States Fidelity & Guaranty Co.,* 149 S.W. 46 (1912) ; *Kauffmann*

v. *Cooper*, 65 N.W. 796 (Neb. 1896); *Brioschi-Minuti Co.* v. *Elson-Williams Const. Co.*, 172 N.W. 243 (N.D. 1919).

Since the corporation La Hood Constructors, Inc., is the successor of La Hood Mechanical Contractors, and having concluded that the bond posted secured directly the persons or entities which furnished materials for the construction of the work, the judgment rendered by the Superior Court, San Juan Part, on November 27, 1962 will be reversed and another rendered sustaining the complaint.

Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Blanco Lugo did not participate herein.